252 So.2d 414

**WAYLAND DISTRIBUTING COMPANY et al.**

v.

**Dorothy M. GAY, Executrix of the Estate of John F. Gay, Jr., Deceased.**

**6 Div. 820.**

Supreme Court of Alabama.

Sept. 9, 1971.

Huie, Fernambucq & Stewart, Birmingham, for appellant Wayland Distributing Co.

Cabaniss, Johnston, Gardner & Clark and N. Lee Cooper, Birmingham, for appellants Birmingham Belt R. Co. and St. Louis-San Francisco R. Co.

Callaway & Vance, Birmingham, for appellee.

McCALL, Justice.

This action was brought under Tit. 7, § 123, Code of Alabama, 1940, by Dorothy M. Gay, as executrix of the will of John F. Gay, Jr., deceased, her husband, to recover damages for his alleged wrongful death.

In substance the plaintiff's case is that the defendant, Wayland Distributing Company, a corporation, (Wayland), negligently ran a tractor-trailer rig into an automobile the deceased was driving in a public

**450**

street intersection in the City of Birmingham, that the defendants, Birmingham Belt Railway Co. and St. Louis-San Francisco Railway Co. (Frisco) negligently parked or left standing a railroad car in violation of a city ordinance, so as to create a condition of danger to vehicles approaching and crossing the street intersection, by obstructing the deceased's view of approaching traffic, and that the concurring negligence of all of the defendants proximately caused her husband's death. The defendants pleaded in short by consent the general issue with leave to introduce in evidence any matter of defense which would be admissible in evidence if well pleaded. The jury returned a verdict for the plaintiff against all defendants and judgment was entered accordingly. The defendants' motions for a new trial were overruled and they now appeal to this court.

The appellants contend that they were not negligent, and further that Gay was guilty of contributory negligence as a matter of law, which bars the plaintiff's recovering against them and entitled the defendants to the affirmative charge. They insist that, notwithstanding Gay, who was driving southwardly on 29th Street, may have stopped at the stop sign, facing him, before entering that street's intersection with Fifth Avenue South, (1) Gay did not drive his automobile with reasonable care after entering the intersection by stopping it before crossing each of the two sets of embedded railroad tracks, running longitudinally east and west on each side of the center line of Fifth Avenue South across the intersection with 29th Street, which runs north and south, and, (2) as he emerged and drove his automobile from an obscured position behind the east end of a railroad car, left standing by the defendant railroads, Gay failed to keep a proper lookout and yield the right of way to the defendant Wayland, but negligently proceeded into the path of the truck which then was approaching in dangerous proximity to Gay's right from the west on Fifth Avenue.

Gay was not negligent as a matter of law simply because he may have crossed the railroad tracks in Fifth Avenue South without first stopping and looking, in the manner in which the law is applied to railroads.

The stop, look and listen law applies for the benefit of a particular class, namely, railroads. Those, not within that class, are not entitled to assert that law as a defense, though those using the public streets, must always exercise such reasonable care for their own safety and for the safety of others as the attending circumstances require. Corona Coal & Iron Co. v. White, 158 Ala. 627, 630, 48 So. 362; Barbour v. Shebor, 177 Ala. 304, 58 So. 276; Adler v. Martin, 179 Ala. 97, 115, 59 So. 597; Ivy v. Marx, 205 Ala. 60, 62, 87 So. 813; Tillery v. Walker, 216 Ala. 676, 114 So. 137.

Therefore the stop, look and listen law is no defense in this case.

We calculate from the plat or diagram introduced in evidence that Fifth Avenue South, at its intersection with 29th Street, is 57' 3" wide with two sets of embedded railroad tracks running longitudinally, therein, each having a 5' gauge, with the external edge of each outside rail of the sets of tracks, being equidistant, 9' 7", from the center of Fifth Avenue South. The north lane for westward vehicular travel is 19' 1" wide between the north curb and the north rail, and the south lane for eastward vehicular travel is 19' from the south curb to the south rail.

If Gay stopped at the entrance to Fifth Avenue South, the "through highway," and yielded the right of way to other vehicles which had entered the intersection from the through highway, or which were approaching so closely on the through highway as to constitute an immediate hazard—though he still was at all times enjoined to exercise due care not to injure others or himself—he owed no further statutory duty to stop his automobile in the intersection to allow other vehicles approaching thereto to pass by. The statute,

Tit. 36, § 19(c), Code of Alabama, 1940, as amended, provides:

"(c) * * * but said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on said through highway shall yield the right of way to the vehicle so proceeding into or across the through highway."

There is nothing in Tit. 36, § 19(c), supra or in § 34–137 General Code of City of Birmingham, 1964, which required Gay to stop his automobile a second time, after once having yielded the right of way as required thereby; and, if Wayland was not approaching so closely to the intersection as to constitute an immediate hazard, when Gay proceeded into the through highway, Gay would be favored with the right of way after entering the intersection.

█ Who had the right of way at this intersection when Gay entered it, depends on resolving the facts from the conflicting testimony of the witnesses as to the rate of speeds at which the two vehicles were traveling immediately before the collision, the distance of each vehicle from the place of collision when Gay entered the intersection, the time required for each vehicle to traverse its distance from the place of collision, as well as variables such as whether or not the speed of each vehicle was constant. According to the witnesses, Gay, after remaining stopped, then drove slowly in the intersection from two to three, or three to four miles per hour. Wayland's driver stated the speed was from ten to fifteen miles per hour. He estimated his own speed at close to thirty miles per hour, while another witness estimated it at from thirty-five to forty miles per hour. Regardless of these different estimates of speed, both vehicles were moving 1.46 feet per second, multiplied by their actual rates of speed.[1] It is not our province to decide the rate of speed of each of the vehicles, but we are obligated to apply the rule that when it is claimed that one party is entitled to the affirmative charge, we must view the evidence in its most favorable tendencies toward the other party. Martin v. Anniston Foundry Co., 259 Ala. 633, 68 So. 2d 323; Southern Ry. Co. v. Sanford, 262 Ala. 5, 76 So.2d 164; Mobile City Lines, Inc. v. Hardy, 264 Ala. 247, 86 So.2d 393. If Gay was driving at the estimate of his slowest speed of two miles per hour, and Wayland was driving at the estimate of his fastest speed of forty miles per hour, then Gay would have taken about fourteen seconds to drive the distance of forty-one feet and one inch to the point of collision from the north line of the intersection, while at fourteen seconds before the collision, Wayland's truck, going at a speed of forty miles per hour and moving 58.40 feet per second, would have been about 800 feet to the west of the point of collision when Gay entered the north line of the intersection.

█ It results from this consideration, whether a likely finding or not, but nonetheless one that the jury could have entertained under the evidence, that the question of who had the right of way under the statute, Tit. 36, § 19(c), at this intersection, when Gay entered it, was one for the jury. The question was one of fact and Gay was not guilty of negligence as a matter of law for failing to yield the right of way.

In Blashfield Automobile Law and Practice, Vol. 3, Chapter 114.81, we find the following statement:

"Where questions concerning the right of way are involved in a suit relating to an intersectional accident, the question of contributory negligence is usually one for the jury, particularly where reasonable men might fairly arrive at different conclusions. Generally, it is a question for the jury whether plaintiff was required to yield the right of way or was contributorily negligent because he failed to yield the right of way, whether an automobile some dis-

---

1. At one mile per hour a vehicle moves 5,280 feet (a mile) in sixty minutes, eighty-eight feet in a minute, and 1.46 feet in a second.

tance away was 'approaching' so as to require plaintiff to yield the right of way, * * *"

■ The appellants contend that Gay was guilty of contributory negligence as a matter of law in failing to keep a proper lookout and that the evidence shows that when he looked in the direction of the oncoming truck, he made no effort to stop. Gay, being in a public highway, was not, of course, a trespasser in crossing the intersection, Cooper v. Agee, 222 Ala. 334, 132 So. 173; Louis Pizitz Dry Goods Co. v. Cusimano, 206 Ala. 689, 691, 91 So. 779; Ivy v. Marx, 205 Ala. 60, 62, 87 So. 813, 14 A.L.R. 1173, nor must he, at his peril, have avoided the collision with a vehicle on Fifth Avenue South, Ray v. Brannan, 196 Ala. 113, 72 So. 16. Whether or not his operation of the automobile, in the manner in which he was driving it, constituted negligence, that proximately contributed to his death, was properly a matter for the jury to decide.

In Barbour v. Shebor, 177 Ala. 304, 311, 58 So. 276, 278, the court said:

"'* * * Each party, in order to avoid accident, is bound to exercise ordinary care and such reasonable prudence and precaution as the attending circumstances may require.' * * *"

■ It is the rule that the driver of an automobile must keep a lookout for those who are using the highway. Ivy v. Marx, supra; Cooper v. Auman, 219 Ala. 336, 122 So. 351; Cooper v. Agee, supra. This is a reciprocal duty. Ray v. Brannan, supra; Ruffin Coal & Transfer Co. v. Rich, 214 Ala. 622, 108 So. 600.

In Reaves v. Maybank, 193 Ala. 614, 69 So. 137, the court quotes from Grand Trunk Ry. Co. of Canada v. Ives, 144 U.S. 408, 417, 12 S.Ct. 679, 682, 36 L.Ed. 485, as follows:

"'There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and pru-

dent, and what shall constitute ordinary care, under any and all circumstances. The terms "ordinary care," "reasonable prudence," and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court.' * * *"

■ In our opinion the question of whether or not Gay was contributorily negligent in not keeping a proper lookout, as well as the issue of the proximate cause of the accident, were questions for the jury to determine. Mobile City Lines, Inc. v. Proctor, 272 Ala. 217, 130 So.2d 388. The court did not err therefore in refusing the affirmative charge on the theory that Gay was contributorily negligent as a matter of law.

Wayland's driver was operating the tractor-trailer, at estimates of speeds varying from 25 to 40 miles per hour. He likewise was approaching an intersection partially hidden to him by the railroad cars. Tit. 36, § 5, Code of Alabama, 1940, provides that inside the limits of cities the maximum speed limit shall be twenty miles per hour for any motor truck or motor vehicle, used primarily for the transportation of property

or any semi-trailer truck, and it shall be prima facie unlawful to exceed that speed, except as provided in subdivision (c) of the Tit. 36, § 5. Subdivision (c) provides that local authorities may increase the speed upon "through highways," Tit. 36, § 1 subdivisions (12) and (48), Code of Alabama, 1940. However where the permissible speed is to be increased, signs are required to be placed, giving notice of such. We do not recall evidence in the record of any signs increasing the maximum lawful speed above twenty miles per hour for motor trucks. Therefore, Wayland's prima facie lawful speed was a maximum of twenty miles per hour, but whether or not that speed, or the speed at which the vehicle was actually traveling, was, in fact, lawful or not depended upon all of the surrounding circumstances and conditions confronting the driver at the time, and was a question for the jury. McCaleb v. Reed, 225 Ala. 564, 144 So. 28; Streetman v. Bowdon, 239 Ala. 359, 194 So. 831; Mobile Cab & Baggage Co. Inc. v. Akridge, 240 Ala. 355, 199 So. 486; Seitz v. Heep, 243 Ala. 372, 10 So.2d 148; Ditsch v. Baggett Transp. Co., 258 Ala. 26, 61 So.2d 98; Brownell-O'Hear Pontiac Co., Inc. v. Taylor, 269 Ala. 236, 112 So.2d 463; Horton v. Mobile Cab and Baggage Co., 281 Ala. 35, 198 So. 2d 619. Likewise, under the evidence, any negligence on the part of the railroads, in stationing their railroad cars, was a question for the jury to decide, as was also the issue of proximate cause.

The appellants argue that the deceased's physical condition is admissible under their pleas of contributory negligence to show negligence on the part of the deceased in the operation of his automobile. To show that the deceased was not physically sound, the appellants called his widow as a witness and directed the following questions to her to which the trial court sustained the appellee's objections: "These records show here he is retired from Lee. Was he retired from Lee Tire Co.?" "Was he full time employed or part time?" "Did Mr. Gay come home in the early part or did he try to work a full day, Mrs. Gay?" "Did Mr. Gay have any chronic illness at the time of the accident?" "Was Mr. Gay a (sic) chronically ill and disabled in any way, Mrs. Gay?" "Had he some operation on his right foot?" "Mrs. Gay, wasn't your husband hospitalized for osteomyelitious (sic) of the right heel?" "Is it true that your husband had a disability effecting (sic) the use of his right foot?" "Was your husband in poor physical health, so that you yourself had to attend to him? You could observe this yourself?"

An inference of negligence does not arise from the existence of physical handicaps. A physical handicap may in a case have no bearing or relation to negligence, but under different facts the handicap and the person's efforts to compensate therefor would be material in determining whether the handicapped person met the standard of ordinary care. Before evidence of such is admissible, there must be a foundation in the evidence for a jury finding that there is some element of negligence to which the handicap relates. Lisowski v. Milwaukee Automobile Mutual Ins. Co., 17 Wis.2d 499, 117 N.W.2d 666. We do not find any causal connection between the proffered testimony of Mrs. Gay, concerning her deceased husband, and his management and control of the automobile at the time of the collision. For example, there is no evidence that Gay attempted to apply his brakes or take other evasive action, or that he was unsuccessful in any such undertaking. Nor did the appellants make any offer to show how Gay's physical condition influenced the operation of his vehicle in any manner. They only sought to introduce evidence of a bare existing condition. To admit the excluded testimony in this case would deal in conjecture and hold that all physically handicapped persons, who become involved in automobile accidents, bear evidence of negligence irrespective of the relevancy of their physical condition to their management and control of the automobile. For the reasons

stated the trial court did not err in sustaining the objections to the stated questions. Neither did the court err in refusing to admit the hospital records which tend to show that the deceased had cancer, emphysema, and other ailments over the years, and had had his right heel excised.

In final summation of the appellee's case, the court overruled the appellants' objection to the following statement by appellee's counsel:

"It is not often, and I doubt if any juror here has ever sat on a death case before. It is an exception in this courthouse. It is not often with the week over and everyone gone home that twelve people sit down to consider the fact that a man has been wiped off the earth, and his family has been cut in half. That is what we are—"

The appellants contend that this argument was an obvious attempt to solicit sympathy from the jury for the deceased's widow.

The court observed in Birmingham Electric Co. v. Cleveland, 216 Ala. 455, 462, 113 So. 403, 408:

" * * * The court cannot too narrowly circumscribe the scope and latitude of argument. Counsel must be allowed, within limits, to draw their own conclusions and to express their arguments in their own way, provided, of course, they do not travel out of the record or make use of unfair means to create prejudice in the minds of the jury. * * * "

In its oral charge, the trial court instructed the jury as follows:

"You are not, you are not, Ladies and Gentlemen of the Jury to decide this case upon any sympathy for anyone. You are not to let sympathy control your verdict in the case. You are not to decide this case upon any prejudice against anyone. You are not to decide this case upon any surmise, conjecture or guesswork. You decide it upon the facts that you hear

from the witness stand.

\* \* \* \* \* \*

"Compensatory damages are those damages which will compensate for loss. You are not to consider that at all, you are only to consider punitive damages. * * * "

If the argument here made was improper, this court has nonetheless held that not all improper argument is so prejudicial as to require reversal. Birmingham Electric Co. v. Mann, 226 Ala. 379, 147 So. 165; Beaird v. State, 219 Ala. 46, 121 So. 38; Street v. Browning, 210 Ala. 331, 98 So. 203. On authority of Southern Ry. Co. v. Jarvis, 266 Ala. 440, 97 So.2d 549, and what was said there, we hold that the argument presented in the present case was not so inflammatory as to require a reversal.

Refusing Wayland's requested written Charge 56 was not error, because the charge assumes, as a matter of law, that the appellant's driver had the right of way in the intersection. Which of the two drivers had the right of way in the intersection was a question of fact for the jury to decide. The charge is also bad because it is argumentative, invades the province of the jury, and, declares a statement of duty which the law did not impose on the deceased. Francis v. Imperial Sanitary Laundry & Dry Cleaning Co., 241 Ala. 327, 2 So.2d 388.

The same appellant's requested Charge 34 is to the effect that if the jury was reasonably satisfied that no school children were leaving the adjacent school at the time of the accident then the fact that the accident occurred within a school zone might not be considered in determining negligence. The charge was properly refused because it is argumentative. Georgia Pacific Ry. Co. v. Propst, 90 Ala. 1, 7 So. 635, and also misleading, Hinton & Sons v. Straham, 266 Ala. 307, 96 So.2d 426.

Appellant railroads' Charge 17–R is argumentative and was refused without error.

In its oral charge, the court instructed the jury on the reciprocal duty of persons operating motor vehicles on public streets and highways, and stated that the degree of care to be observed by every driver is that which a reasonable prudent person would exercise under like or similar circumstances and that this duty requires operators to keep and maintain a reasonable lookout for others using the public highways. The court also defined negligence generally, and also the theory of the defense of contributory negligence as it applied to the appellee's decedent. The court stated that the appellee could not recover, if the jury was reasonably satisfied that the deceased was guilty of negligence that proximately brought about his death.

We think the oral charge adequately covered the law and the defense of contributory negligence as presented in appellant railroads' two identical charges, each numbered 15, and each of the charges numbered 16. For this reason, the trial court will not be put in error for refusing to give these two written charges.

 Among other matters, appellant railroads' two charges 18 instruct the jury that the deceased could not assume that there would be no traffic approaching the standing railroad cars and he was under a duty to ascertain if possible whether there was traffic approaching from the west. These charges are not only argumentative and misleading, but they also impose too great a degree of care on the deceased. He was required only to exercise reasonable care to ascertain whether there was approaching traffic.

Appellant Wayland argues in brief that its motion for a new trial should have been granted under the assigned grounds that the court committed error in refusing it the affirmative charge and also the affirmative charge with hypothesis, because if the evidence was to be believed by the jury, the only conclusion, that could have been drawn, was that the appellee's testator failed to yield the right of way, failed to exercise ordinary care for his own protection in failing to look to his right when the view was no longer obstructed, and in failing to see the truck when it was in plain sight. These matters of argument have already been covered in this opinion. Further elaboration would serve no useful purpose. Appellant's remaining grounds of the motion for a new trial have also been given our careful consideration. We hold that the trial court did not err in overruling the appellant's motion for a new trial.

The judgment of the trial court is due to be affirmed.

Affirmed.

HEFLIN, C. J., and SIMPSON, COLEMAN and BLOODWORTH, JJ., concur.

