605 So.2d 835 (1992)
Mary K. THETFORD, as Administratrix of the Estate of Shirley Ann Banks, deceased
v.
CITY OF CLANTON, et al.
1910567.
Supreme Court of Alabama.
September 18, 1992.
*836 Ray O. Noojin, Jr. of Hare, Wynn, Newell & Newton, Birmingham, for Mary K. Thetford.
Don G. DeCoudres, Birmingham, for City of Clanton.
James W. Garrett, Jr. of Rushton, Stakely, Johnston, & Garrett, P.A., Montgomery, for Holiday Inns, Inc., Williams Motels, Inc. and Eddie Gore.
PER CURIAM.
The trial court entered a summary judgment in favor of the defendants, the City of Clanton; Holiday Inn, Inc.; Eddie Gore, the manager of the Holiday Inn in Clanton; and Williams Motels, Inc., the operator of the Clanton Holiday Inn, in this wrongful death action. The plaintiff, Mary K. Thetford, appeals.
The following agreed summary of the facts was set forth in the pretrial order:
"On or about June 10, 1989, Shirley Ann Banks was a business invitee of the Holiday Inn in Clanton, Alabama. On or about the same date, Eddie Gore, the manager and employee of said Holiday Inn, accompanied [Michael] Banks to Shirley Ann Banks' room where, in the presence of a representative of the Clanton Police Department, the defendant [Gore] sawed through a locked door chain to gain entry to Shirley Ann Banks' room. Mr. Banks later took Shirley Ann Banks to another location, where he inflicted such severe injuries on her that she died as a proximate result of his beatings."
Viewing the evidence in the light most favorable to the non-movant, we also note the following additional facts.
On June 6, 1989, Shirley Ann Banks telephoned the Chilton County sheriff's office to report an incident of domestic violence. The County had no deputies to respond to the call; therefore, the City of Clanton, at the request of the County, responded.
Officer Randy Morris, with the Clanton Police Department, answered the call, and upon his arrival at the Banks home he noted that Shirley Ann showed signs of physical abuse. He asked Michael Banks to leave the home for the night and told Shirley Ann she could file a complaint. Shirley Ann declined to file a complaint, *837 and Morris left. Morris reported the incident to the County, but he did not file a report as required by § 15-10-3(b), Ala. Code 1975.
The following day, Wednesday, June 7, Shirley Ann, with her two-year-old daughter, checked into the Holiday Inn in Clanton. She checked in under the name of Shirley Dickens. She told the desk clerk that she was hiding from her husband and requested that the desk clerk not tell anyone she was there. She also requested that her husband not be permitted to enter her room. The desk clerk noticed that Shirley Ann appeared to have been beaten and that she had a bald spot on her head.
On June 8, Michael showed up at the Holiday Inn to take Shirley Ann home. Michael testified that on June 7 he had learned that she was staying at the Holiday Inn by driving around hotels and motels from Montgomery to Birmingham looking for her automobile. He testified that he got her room number from a registration slip on the front seat of her automobile. He testified that he was worried about their child and that he went to the motel on June 8 to take the child away from Shirley Ann. Shirley Ann, according to his deposition testimony, admitted him willingly and willingly allowed him to leave with their child.
Later that day, the motel staff became concerned when they could not get a response from Shirley Ann's room. Eddie Gore called the City's police department to send someone. Morris responded to the call; he was not informed that the call concerned Shirley Ann. Shirley Ann admitted Morris to her room. Morris testified in his deposition that he recognized Shirley Ann from the prior call and that she was intoxicated. He also testified that Shirley Ann told him that Michael had beaten her again and that she had checked into the Holiday Inn to hide from Michael. She asked Morris not to tell anyone at the Holiday Inn who she was. Morris promised not to tell anyone, and he left her room. He told the staff of the Holiday Inn "that everything was okay and that the lady was all right." Morris did not file an incident report.
According to Michael's deposition testimony, on June 10 Shirley Ann telephoned him to take her home. Michael testified that he packed some of her things and took them to his car; that when he returned to the room, Shirley Ann asked him to get her a drink from a machine; and that while he was out of the room, Shirley Ann locked and chained the door. Michael said he had her key but could not re-enter the room because of the chain.
Michael went to the front desk and told Gore that he was Shirley Ann's husband and that she would not let him in the room. He also told Gore that his wife was "sick or crazy." Gore, after the Clanton police were called and appeared on the scene, went to Shirley Ann's door and unlocked it with his pass key. When Shirley Ann failed to respond to his call, Gore cut the chain on the door. Officer Peoples of the Clanton Police Department was there to witness the cutting of the chain.
Shirley Ann was on the floor beside the bed farthest from the door. There is conflicting testimony as to whether she was intoxicated. However, she agreed to go with Michael, but asked him to take her to her mother's house. In front of Gore and Peoples, Michael stated that he was going to kill Shirley Ann. Peoples testified in deposition as follows:
"A. "[After the chain was cut,] I didn't hear Mr. Gore make no statement as I can remember. No type statement was made by him. Banks went over to the female that was lying on the floor. He got her up and then he started talking to her. She asked him to carry her to her mama's. He said that he would take her. Then she start[ed] making preparation, combing her hair. They started getting ready to go. We [were] over by the doorway at that time. He said `I will carry you to your mama's.'
"Q. Anything else?
"A. Not until a few minutes later when I made the statement when he *838 saidI don't know what happened that caused him to say `I am going to kill you' like that. We [Gore and Peoples] looked back and then he changed that statement, and then he started talking to us about it and said `I didn't mean that.'"
Later that day, Michael and Shirley Ann went to the Ramada Inn motel in Prattville, where Michael fatally beat Shirley Ann. She died in her sleep in the early morning hours of June 11 of injuries suffered in that beating.
In April 1990, Mary Thetford, Shirley Ann's sister and her personal representative, filed a wrongful death action against Eddie Gore, Holiday Inn, Inc., and the City of Clanton. The complaint was later amended to add Williams Motels, Inc. Williams Motels, Inc., Holiday Inn, Inc., and Eddie Gore will hereinafter be referred to as the "hotel defendants."[1] The hotel defendants and the City moved for a summary judgment, which the trial court granted. Thetford appeals.
A summary judgment is appropriate upon a showing that no genuine issue of material fact exists and that the moving party is entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P. In reviewing a summary judgment, this Court will view the evidence in a light most favorable to the nonmovant and will resolve all reasonable doubts against the movant. Fincher v. Robinson Bros. Lincoln-Mercury, Inc., 583 So.2d 256 (Ala.1991). The present action was filed in April 1990; therefore, the applicable standard of review is the "substantial evidence rule." See § 12-21-12, Ala.Code 1975. "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). Therefore, the issue on appeal is whether substantial evidence was presented to preclude summary judgment in favor of the hotel defendants and the City.

I.
This Court has not specifically addressed the standard of liability for an innkeeper's wrongful or unauthorized entry into a guest's room. However, the general rule appears to be as follows:
"After a guest has been assigned a room at an inn or hotel for his exclusive use, he has a right of occupation for all lawful purposes until it is vacated, subject only to the right of the innkeeper or his servants to enter the room at reasonable times and in a proper manner, and for such purposes as might be necessary in the general management of the hotel, or upon the happening of some unanticipated contingency....
"An innkeeper is liable if he or his servant unjustifiably or unreasonably interferes with his guest's right to privacy and to the peaceful enjoyment of his room."
40 Am.Jur.2d Hotels, Motels, and Restaurants § 61 (1968). Stated another way, the innkeeper has "an affirmative duty, stemming from a guest's rights of privacy and peaceful possession, not to allow unregistered and unauthorized third parties to gain access to the rooms of its guests." Campbell v. Womack, 345 So.2d 96, 98 (La.Ct.App.), cert. denied, 347 So.2d 247 (La.1977).
American Jurisprudence 2d states further concerning innkeeper liability:
"While statements are to be found that innkeepers are responsible for the exercise of a `high degree' of care to prevent injury to their guests, according to a number of cases, the rule is that innkeepers do not owe the same duty to their guests that a common carrier owes to its passengers, and are not insurers of their safety, quiet, and repose; the obligation *839 of innkeepers toward their guests is the exercise of reasonable care for their safety. A boardinghouse or lodginghouse keeper, like an innkeeper, is not an insurer of the safety of his boarders or lodgers, but he is only required to exercise reasonable care for their safety....

"Whether a proprietor of an inn, hotel, boardinghouse or lodginghouse or restaurant has exercised reasonable care for the safety of the occupant or patron is to be determined in the light of the circumstances of each case. It has been said that the reasonable care which an innkeeper must exercise for the safety and comfort of his guests varies with the grade and quality of the accommodations that he offers. It is the breach of the duty to exercise reasonable care for the safety of the guests, followed by injury, which creates liability on the part of the innkeeper."
40 Am.Jur.2d Hotels, Motels and Restaurants § 82 (1968) (emphasis added).

"A proprietor of an inn, hotel, restaurant, or similar establishment is liable for an assault upon a guest or patron by another guest, patron, or third person where he has reason to anticipate such assault, and fails to exercise reasonable care under the circumstances to prevent the assault or interfere with its execution. Conversely, he is not liable for an assault committed under such circumstances that it could not reasonably have been anticipated in time to prevent the occurrence.... An innkeeper who failed to protect a guest after having been expressly warned by him of the possibility of an assault by another guest has been held liable therefor."
Id. § 112 (emphasis added).
Cases in other jurisdictions have discussed innkeepers' liability. In Donaldson v. Olympic Health Spa, Inc., 175 Ga.App. 258, 333 S.E.2d 98 (1985), the Georgia Court of Appeals said that a proprietor has a duty to protect an invitee or guest from injury caused by a third person if the proprietor is reasonably aware of the probability or likely possibility of such an injury by a third party and if such an injury could be avoided by the proprietor through the exercise of ordinary care and diligence. The court further stated that, even if the proprietor was negligent in some degree, he would be insulated from liability if the intervention of the illegal act was not foreseeable. In such a case, the negligence of the proprietor would not be the proximate cause of the injury. Id.
In Atlanta Center, Ltd. (A.B.V.I. Corp.) v. Cox, 178 Ga.App. 184, 341 S.E.2d 15 (1986), the Georgia Court of Appeals held that summary judgment was precluded in an action against a hotel for damages based on injuries sustained by a guest in an assault that occurred while the guest was leaving the elevator on the floor on which his room was located. The hotel, the court held, having undertaken a duty to provide security to its patrons using elevators and hallways, was required to perform it in a non-negligent manner. Questions of the adequacy and proper utilization of the hotel's security were issues for the jury, as was the question of reasonable foreseeability of a criminal act.
In Gurren v. Casperson, 147 Wash. 257, 265 P. 472 (1928), a female guest in a hotel, who was assaulted by another guest after she had expressly warned the hotel telephone operator of the possibility of the assault and had requested protection against the acts of the other guest, was held entitled to recover from the hotel owner because of his failure to heed her warning and to offer her protection. Affirming the plaintiff's judgment, the Washington Supreme Court noted that the proprietor of any public house owes a duty to those who come to his place to protect them from insult or other annoyances or dangers. Although noting some disagreement as to whether the duty of a hotelkeeper to protect its guests from assault is absolute or is limited to the exercise of ordinary care only, the court explained that nearly all cases seem to agree that the proprietor owes the guest some duty and must furnish some protection. The court emphasized that the hotelkeeper in that case had been expressly warned of the possibility of *840 the event, after the assaulted guest had demanded from the hotel clerk protection against the acts of the wrongdoer.
In Coca v. Arceo, 71 N.M. 186, 376 P.2d 970 (1962), the New Mexico Supreme Court said that the rule as to liability of an innkeeper for injuries to one patron from assault by another does not require a long and continued course of conduct to establish that the proprietor had knowledge of a violent disposition of the assaulting patron; it held that there need only be a sequence of conduct sufficiently long to enable the proprietor to act for a patron's safety. It is a question of fact whether the hotel manager had knowledge of the plaintiff's wishes, etc.; whether, if he did have, or should have had, such knowledge, he failed to exercise the degree of care commensurate with the danger to be avoided. These are questions that can be determined only upon a trial.
The hotel defendants argue that there is no evidence of proximate cause because, they say, the subsequent actions of Michael Banks constitute an "intervening cause." We have held that in order to recover against a defendant for harm caused by the criminal actions of a third party, the plaintiff must establish that the defendant "knew or had reason to know of a probability of conduct by third persons that would endanger the plaintiff." Nail v. Jefferson County Truck Growers Association, Inc., 542 So.2d 1208, 1211 (Ala. 1988). Also, a subsequent cause of the plaintiff's injuries is not an "intervening cause," unless it was unforeseeable.
"`The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such tort or crime, unless the actor at the time of his negligent conduct should have realized the likelihood that such a situation might be created thereby and that a third person might avail himself of the opportunity to commit such a tort or crime.'"
Liberty National Life Insurance Co. v. Weldon, 267 Ala. 171, 188, 100 So.2d 696, 710 (1957) (quoting Restatement (Second) of Torts § 448 (1977)); see also Michael L. Roberts & Gregory S. Cusimano, Alabama Tort Law Handbook § 1.2, at 19 (1990). Proximate cause is an act or omission that in a natural and continuous sequence, unbroken by any new independent causes, produces the injury and without which the injury would not have occurred. The requirement of foreseeability is imposed to preclude a finding of liability when the defendant's conduct was part of the causal chain of events leading to the injury but the resulting injury could not have been reasonably anticipated by the defendant. Foreseeability does not require that the particular consequence should have been anticipated, but rather that some general harm or consequence could have been anticipated.
A jury may conclude that the fatal beating, seven hours later, was part of an unbroken chain of events, and, therefore, not an intervening act that would exempt the hotel defendants from liability. The affidavit of the clerk who worked at the front desk of the hotel, Beverly Smitherman, was presented to counter the summary judgment motion. Ms. Smitherman stated in pertinent part:
"I came to work on Friday, the 9th of June, 1989, and Betty Yeargan told me not to put any phone calls through to Room 126 or tell anyone who was in room 126.... Lori Sellers told me when she came in that the woman in Room 126 had told her that her husband had beaten her up and had called several times looking for her, and she did not want her husband or anyone to know she was there.
"... I asked him [Mr. Gore] why Mrs. Banks, who was in room 126, had to leave. Mr. Gore stated the room was in a mess, he did not want her there, and he was glad to get her out of there.
"... The desk personnel receive orders only from Sandra and Eddie Gore. When we get an order from one of the managers, we relay that order to the appropriate department. No one can *841 give any orders except the front desk or directly from Eddie or Sandra Gore. When a circumstance arises that the desk personnel feels needs the attention of the managers, a note is left for them, plus the managers are told by mouth. The Gores live in a trailer on the premises, and they can be, and are sometimes, contacted at night or when the situation dictates it. The situation with Mrs. Banks would dictate an immediate message to the Gores as soon as she arrived. Mr. and Mrs. Gore were told about the problem with Mrs. Banks and her husband when she checked in on Wednesday.... Mr. Gore had to have known about this problem when she checked in on Wednesday, the 7th of June, 1989."

From this affidavit, it is evident that there is an issue of fact about whether Gore and Holiday Inn knew that Shirley Ann was an abused wife who was hiding in fear from her abuser. Thetford introduced sufficient evidence to entitle her to reach the jury. The fact that Shirley Ann notified the hotel clerk that she had been beaten by her husband and was hiding from him for fear of additional abuse would permit a jury to conclude that the hotel manager could foresee another beating by the husband. Foreseeability is an issue for the jury to resolve.
As we stated in West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989), to defeat a properly supported motion for summary judgment, the plaintiff must present substantial evidence, i.e., "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." We conclude that the plaintiff did that.
After a thorough review of the evidence before the trial court on the hotel defendants' motion for summary judgment, we find that questions of material fact exist as to (1) whether Gore's actions of cutting the chain on Shirley Ann's door and allowing her husband, Michael, to enter her room were justified and/or reasonable under the circumstances; and (2) if the actions were not justified and/or reasonable under the circumstances, whether Michael Banks's criminal conduct was foreseeable when Gore cut the chain. Therefore, the summary judgment in favor of the hotel defendants is reversed.

II.
Thetford argues that the failure of the City's police officers to comply with the mandates of § 15-10-3, Alabama Code 1975, constitutes "statutory negligence" and that the summary judgment was therefore inappropriate as to the City. We disagree. The Family Violence Act, Act No. 89-857, Ala. Acts 1989, was passed on May 17, 1989. The incidents leading up to Shirley Ann's death began on June 6, 1989, culminating in her death on June 11, 1989.
The four elements necessary to a recovery under the theory of statutory negligence are as follows:
"(1) The trial judge must determine as a matter of law that the statute was enacted to protect a class of persons which includes the litigant seeking to assert the statute. Simpson v. Glenn, 264 Ala. 519, 88 So.2d 326 (1956). See Bentley v. Lawson, 280 Ala. 220, 191 So.2d 372 (1966); McCloud v. Williams, 257 Ala. 611, 60 So.2d 339 (1952).
"(2) The trial judge must find the injury was of a type contemplated by the statute. See Francis v. Imperial Sanitary Laundry & Dry Cleaning Co., 241 Ala. 327, 332, 2 So.2d 388, 391 (1941) (`[Whether a criminal statutory violation can be the basis of negligence per se] depends upon the nature and purpose of the regulation and whether it was enacted for the benefit of [the injured] individually or as a member of a class.'). See also W. Prosser, Handbook on the Law of Torts § 36, at 195-97 (4th ed. 1971).
"(3) The party charged with negligent conduct must have violated the statute. See Horn v. Smith, 292 Ala. 503, 296 So.2d 719 (1974); Horton v. *842 Mobile Cab & Baggage Co., 281 Ala. 35, 198 So.2d 619 (1967); Mobile Cab & Baggage Co. v. Armstrong, 259 Ala. 1, 65 So.2d 192 (1953); Tindell v. Guy, 243 Ala. 535, 10 So.2d 862 (1942).
"(4) The jury must find the statutory violation proximately caused the injury. Cox v. Miller, 361 So.2d 1044 (Ala.1978); Vines v. Plantation Motor Lodge, 336 So.2d 1338 (Ala. 1976); Allman v. Beam, 272 Ala. 110, 130 So.2d 194 (1961)."
Fox v. Bartholf, 374 So.2d 294 (Ala.1979).
The plaintiff contends that the Clanton police were guilty of statutory negligence in this case because they failed to comply with § 15-10-3(b), which provides "Whenever a law enforcement officer investigates an allegation of family violence, whether or not an arrest is made, the officer shall make a written report of the alleged incident, including a statement of the complaint, and the disposition of the case."
As noted earlier, this statute, enacted as an amendment to the statute authorizing officers to make arrests without warrants, had been law for only three weeks before the incident involved in this case. It is an expression of growing concern on the part of the legislature about violence in the family. It requires the officer to file a report, but does not say where and does not say what should be done with the report. More pertinently, it does not provide any resources to help the victims of family abuse. Under these circumstances, a jury could not conclude that the officer's failure to file the report required by the statute proximately caused the death of this victim of abuse. Therefore, we affirm the summary judgment as it relates to the City of Clanton.
For the reasons stated above, the summary judgment is reversed as to the hotel defendants; it is affirmed as to the City of Clanton; and the cause is remanded to the trial court for proceedings in accordance with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and SHORES and STEAGALL, JJ., concur.
ALMON, J., concurs specially.
MADDOX, J., concurs as to the City and dissents as to the hotel defendants.
ADAMS, HOUSTON and INGRAM, JJ., concur as to the hotel defendants and dissent as to the City.
KENNEDY, J., concurs in the result as to the hotel defendants and dissents as to the City.
ALMON, Justice (concurring specially).
I agree that the summary judgment is due to be reversed as to the hotel defendants and is due to be affirmed as to the City of Clanton. I write separately to make additional points that I think are pertinent, particularly with respect to the City.
In regard to the liability of the hotel defendants, I note that James v. Governor's House, Inc., 284 Ala. 404, 225 So.2d 815 (1969), while not directly on point, applied principles similar to the principles discussed in the per curiam opinion. The Court in James cited Florence Hotel Co. v. Bumpus, 194 Ala. 69, 69 So. 566 (1915), and Dixon v. Hotel Tutwiler Operating Co., 214 Ala. 396, 108 So. 26 (1926), as quoting with approval from De Wolf v. Ford, 193 N.Y. 397, 86 N.E. 527 (1908). The Court in James repeated a long quotation from De Wolf that included the following:
"When a guest is assigned to a room for his exclusive use, it is his for all proper purposes until he gives it up. This exclusive right of use and possession is subject to such emergent and occasional entries as the innkeeper and his servants may find it necessary to make in the reasonable discharge of their duties; but these entries must be made with due regard to the occasion and at such times and in such manner as are consistent with the rights of the guest."
284 Ala. at 408, 225 So.2d at 817-18. Each of these four cases involved abusive conduct or assault, as well as unauthorized intrusions, by employees of the defendant *843 hotel. Thus, they do not directly apply to a situation, such as the one here, of an arguably unauthorized entry by the hotel employee, the admission thereby of a third party to the guest's room, and a subsequent assault by the third party on the guest. The principle of James, however, is sufficiently similar to the rules cited in the per curiam opinion to be worth citing as authority for the reversal as to the hotel defendants.
The intrusion into the room assigned to Mrs. Banks (known to the hotel as Shirley Dickens) may have been improper under the principles cited above and in the per curiam opinion. In particular, the affidavits of the desk clerks indicate that the hotel knew that the very purpose for which Mrs. Banks checked into the hotel was to avoid her husband, who was allowed into the room by the cutting of the chain. Because of the indication that Mrs. Banks might be sick or otherwise in need of help, however, the intrusion might have been proper. If a jury found that the initial opening of the door was proper, it might nevertheless find that the hotel should have repaired the chain and returned Mrs. Banks to exclusive possession of the room as soon as it found that she did not need assistance.
This Court has often held that a party is not liable for the criminal act of a third party absent actual notice of the imminent danger of an attack and a duty to protect from the attack. See, e.g., W.L.O. v. Smith, 585 So.2d 22 (Ala. 1991); Webster v. Church's Fried Chicken, Inc., 575 So.2d 1108 (Ala.1991); Douglas v. McDonald's Corp., 565 So.2d 137 (Ala.1990); Bailey v. Bruno's, Inc., 561 So.2d 509 (Ala.1990), and cases cited therein; Henley v. Pizitz Realty Co., 456 So.2d 272 (Ala.1984). There was evidence that the hotel had actual notice, for example, that Mrs. Banks's husband had beaten her, that she feared him, and that she had checked into the hotel to avoid him. In Mr. Gore's presence, he threatened to kill her. The hotel had given her a private room and had therefore undertaken the duty described above to take reasonable care to prevent unauthorized intrusions. The evidence supporting the claim against the hotel was sufficient to withstand the motion for summary judgment.
Regarding the claim against the City of Clanton, I note that the City argues that it was entitled to a judgment under principles of substantive immunity. It cites Calogrides v. City of Mobile, 475 So.2d 560 (Ala.1985), and Nichols v. Town of Mount Vernon, 504 So.2d 732 (Ala. 1987), as establishing that a municipality is not subject to liability to individuals for failure to provide police protection, because "a city's obligation to provide for the public health, safety, and general welfare of its citizens is paramount and ... the imposition of liability to particular individuals in certain circumstances would necessarily threaten the benefits of certain services to the public at large." Calogrides, 475 So.2d at 561.
Even though the plaintiff characterizes her claim as being based on statutory negligenceOfficer Morris's failure to file a reporther claim still depends ultimately on the allegation that Officer Peoples failed to take proper action in the hotel room on June 10. Thus, her claim depends on an allegation of a failure to provide police protection. She alleges no definite action that Officer Peoples would have been required to take if he had known of the earlier complaints answered by Officer Morris. The principles of substantive immunity are particularly applicable to a case such as this one, where an officer is required to make difficult decisions on the spur of the moment. The need to attract and keep capable officers, the allocation of scarce resources for law enforcement, and the need for officers to make decisions based on the requirements of the circumstances rather than on their potential for personal liability are among the reasons for the doctrine of substantive immunity for public officers. This Court said in Calogrides, supra:
"`For the courts to proclaim a new and general duty of protection in the law of tort, even to those who may be the particular seekers of protection based on specific hazards, could and would inevitably determine how the limited police resources *844 of the community should be allocated and without predictable limits....
"`....
"`... [T]here is no warrant in judicial tradition or in the proper allocation of the powers of government for the courts, in the absence of legislation, to carve out an area of tort liability for police protection to members of the public'"
475 So.2d at 562, quoting Riss v. City of New York, 22 N.Y.2d 579, 582-83, 293 N.Y.S.2d 897, 897-98, 240 N.E.2d 860, 860-61 (1968). I think these considerations apply in this case. For this reason, I agree that the summary judgment was properly entered for the City of Clanton.
MADDOX, Justice (concurring in part; dissenting in part).
I agree with that portion of the opinion that affirms the summary judgment for the City of Clanton, but I must respectfully disagree with that portion reversing the summary judgment for the hotel defendants.
The key factor used in this Court's prior decisions regarding questions of liability for criminal acts of third parties is foreseeability. In Latham v. Aronov Realty Co., 435 So.2d 209 (Ala.1983), the Court, quoting from Vines v. Plantation Motor Lodge, 336 So.2d 1338, 1339 (Ala.1976), held, in part:
"`The key here is foreseeability. This court has held many times that a person, who by some act or omission sets in motion a series of events, is not responsible for consequences of intervention of another agency, unless at the time of his original act or omission, the act of the intervening agency could reasonably be foreseen. If so, the causal chain is not broken. If the injury results from an independent intervening, efficient cause, not reasonably foreseeable, the original negligent act or omission is not the proximate cause of injury....'"
Based on that rule of law, I cannot see how, given the facts of this case, the hotel defendants could reasonably have foreseen that the husband would take his wife to another motel and kill her.
INGRAM, Justice (concurring in part; dissenting in part).
I concur with the majority in reversing the summary judgment as to the hotel defendants; however, after a thorough and searching review of the record, I must dissent from the holding as to the City of Clanton.
In regard to the City, Thetford argues that the failure of the City's police officers to comply with the mandates of § 15-10-3, Ala.Code 1975, constituted "statutory negligence" and that the summary judgment was therefore inappropriate as to the City.
The majority correctly notes the four elements necessary to a recovery under the theory of statutory negligence:
"(1) The trial judge must determine as a matter of law that the statute was enacted to protect a class of persons which includes the litigant seeking to assert the statute. Simpson v. Glenn, 264 Ala. 519, 88 So.2d 326 (1956). See Bentley v. Lawson, 280 Ala. 220, 191 So.2d 372 (1966); McCloud v. Williams, 257 Ala. 611, 60 So.2d 339 (1952).
"(2) The trial judge must find the injury was of a type contemplated by the statute. See Francis v. Imperial Sanitary Laundry & Dry Cleaning Co., 241 Ala. 327, 332, 2 So.2d 388, 391 (1941) (`[Whether a criminal statutory violation can be the basis of negligence per se] depends upon the nature and purpose of the regulation and whether it was enacted for the benefit of [the injured] individually or as a member of a class.'). See also W. Prosser, Handbook on the Law of Torts § 36, at 195-97 (4th ed. 1971).
"(3) The party charged with negligent conduct must have violated the statute. See Horn v. Smith, 292 Ala. 503, 296 So.2d 719 (1974); Horton v. Mobile Cab & Baggage Co., 281 Ala. 35,198 So.2d 619 (1967); Mobile Cab & Baggage Co. v. Armstrong, 259 Ala. 1, 65 So.2d 192 (1953); Tindell *845 v. Guy, 243 Ala. 535, 10 So.2d 862 (1942).
"(4) The jury must find the statutory violation proximately caused the injury. Cox v. Miller, 361 So.2d 1044 (Ala.1978); Vines v. Plantation Motor Lodge, 336 So.2d 1338 (Ala.1976); Allman v. Beam, 272 Ala. 110, 130 So.2d 194 (1961)."
Fox v. Bartholf, 374 So.2d 294 (Ala.1979).
Section 15-10-3(b) requires that "[w]henever a law enforcement officer investigates an allegation of family violence, whether or not an arrest is made, the officer shall make a written report of the alleged incident, including a statement of the complaint, and the disposition of the case."
"Family violence" is defined as:
"any incident resulting in the abuse, assault or the attempt or threats thereof, between family or household members. Abuse is further defined as any offense defined under sections 13A-6-60 through 13A-6-70, or abusing children under section 26-15-1 through 26-15-4. Assault is further defined as any offense defined under sections 13A-6-20 through 13A-6-25. Family or household members include spouses, former spouses, parents, children, or any other persons related by blood or marriage, a person with whom the victim has a child in common or a present or former household member."
§ 15-10-3(a)(8), Ala.Code 1975.
Clearly, § 15-10-3(b) was intended to protect victims of family violence; Shirley Ann Banks was a member of this protected class. Also, physical abuse is a type of injury contemplated by the statute. Morris and the City of Clanton did not comply with the mandatory terms of the statute. Therefore, the only element under Fox at issue on this appeal is whether the City's failure to comply with the terms of the statute proximately caused the injury. I believe the plaintiff presented sufficient evidence to show the existence of a genuine issue of material fact as to the proximate cause of Shirley Ann's death.
Officer Peoples, who witnessed the cutting of the chain from Shirley Ann's door, testified in his deposition that in his presence Michael threatened to kill Shirley Ann. Also, when asked in his deposition what it meant to him to be called to witness the cutting of the chain, Peoples responded:
"A. Well, when I was called in reference to him cutting the chains, I thought maybe from my understanding only was the husband and wife was into it for some reason. The husband left out and the wife gets mad and locked him out. He had paid for the room and he needed to get back inside. He said she was sick. I felt that the lady was sick."
(Emphasis supplied.)
As the majority notes, Michael had not paid for the room and, consequently, he had no right to enter the room. Officer Peoples had received no information, and indeed none was available for him to receive, indicating that Shirley Ann was at the Holiday Inn hiding from her husband. He had no information indicating that Michael had abused Shirley Ann. Therefore, he had no information, such as the reports would have provided, to indicate to him that Michael would make good on his threat, made in the presence of Officer Peoples, to kill Shirley Ann. Based upon Officer Peoples's testimony a jury could find that the failure to file the reports was a proximate cause of Shirley Ann's death.
I believe that Thetford presented substantial evidence that had the information required to be reported by § 15-10-3(b) been available to Peoples, Michael's threat, made in People's presence, would have been taken seriously and Peoples would not have believed that Michael had a right to enter the hotel room. The evidence certainly is sufficient to present a jury question as to whether the failure to file the incident reports as required by law, which resulted in Officer Peoples's lack of information, was a proximate cause of Shirley Ann's death.[2]
*846 I believe that Thetford presented sufficient evidence to defeat the City of Clanton's summary judgment motion. The majority argues that the statute had not been in effect very long and that it specified no procedure for filing the reports. However, I cannot agree that these facts are sufficient as a matter of law to entitle the City of Clanton to a summary judgment. These facts regarding the statute, like the facts presented by Thetford, raise genuine issues of material fact that should be decided by a jury. Therefore, I respectfully dissent from that part of the majority's opinion affirming the summary judgment as to the City.
ADAMS and HOUSTON, JJ., concur.
NOTES
[1] Holiday Inn, Inc., in its motion for summary judgment, raised an issue regarding the agency relationship between itself and Williams Hotels, which operated the Holiday Inn in Clanton. The trial court did not address this issue in entering the summary judgment in favor of the hotel defendants, and it is not addressed by either party on appeal. Therefore, the issue is not before this Court on appeal.
[2] I note that the City's only contention in its brief is that it had no duty to arrest Michael Banks. This contention does not address the issue presented by Thetford for this Court's review, which was whether the failure to file an incident report proximately caused Shirley Ann Banks's death.