435 So.2d 209 (1983)
Woodrow Wilson LATHAM
v.
ARONOV REALTY COMPANY, et al.; National Security of Alabama, Inc.
82-86.
Supreme Court of Alabama.
July 8, 1983.
C. Delaine Mountain and Herbert M. Newell, III, Tuscaloosa, for appellant.
Wilbur J. Hust, Jr. of Zeanah, Donald & Hust, Tuscaloosa, for appellees Aronov Realty Co., et al.
John T. Kirk of Kirk & Manasco, Montgomery, for appellee National Security of Alabama, Inc.
MADDOX, Justice.
Plaintiff/appellant was criminally assaulted in the parking lot of a shopping *210 mall by third parties. He sued the owners of the mall, the rental agent and the security service hired to guard the mall. The trial judge granted a motion for a directed verdict as to all defendants except those who assaulted the plaintiff/appellant. The sole issue for this Court's consideration is whether the other defendants had a duty to protect the plaintiff from the criminal assault by third parties.
Plaintiff/appellant, Woodrow Wilson Latham, worked at Giovanni's, a restaurant at University Mall in Tuscaloosa. After working until around 1:00 a.m. on the morning of July 22, 1981, he left the restaurant with three friends and they went to their cars parked in the lot adjacent to the mall. Once outside, Latham and his friends engaged in an exchange of words with two of the defendants, Horace Hallman and Lonnie Stone. The exchange led to a fight, during which, the evidence showed, Stone struck Latham with a tire tool. Latham sued Hallman and Stone, but also named as defendants, the owners of University Mall; Aronov Realty Co., the agent of University Mall; and National Security, a security agency which had contracted to provide protection at the mall.
Latham alleged that (1) the owners and Aronov Realty, as rental agent, were negligent in failing to maintain proper security on the mall premises; (2) that the negligence was willful and wanton, because the defendants had knowledge of the danger to him; (3) that Aronov, National Security, and the owners breached their contract with Giovanni's, Latham's employer, to provide security; and (4) that National Security negligently provided security for the mall.
At the close of the plaintiff's case, the owners and Aronov Realty, Inc. each filed motion for a directed verdict. The trial court granted both motions. Latham appeals, claiming the court erred in granting these two motions.
The jury ultimately returned a verdict in favor of Latham for $35,000 against Stone and Hallman. The judgment based on that verdict is not a subject of this appeal.

I
The issue we address can be stated thusly: What duty does a storekeeper owe to invitees lawfully on the premises? In Alabama, the law clearly imposes a duty upon storekeepers to exercise reasonable care in providing and maintaining reasonably safe premises for the use of their invitees. Winn-Dixie Store No. 1501 v. Brown, 394 So.2d 49 (Ala.Civ.App.1981); Quillen v. Quillen, 388 So.2d 985 (Ala.1980). Latham, as an employee of a tenant, was an invitee, because the law states that an employee of a tenant is considered an invitee of the landowner. See Coggin v. Starke Bros. Realty Co., Inc., 391 So.2d 111, 112 (Ala.1980); Mudd v. Gray, 200 Ala. 92, 75 So. 468 (1917).
Latham urges this Court to adopt the rule of law that the landlord's duty to protect invitees on its premises includes a duty to protect against a criminal assault by a third party.
What is the Alabama rule of law relating to liability of a landlord for the unlawful acts of third parties?
In Great Atlantic & Pacific Tea Co. v. Keltner, 29 Ala.App. 5, 8, 191 So. 633, cert. denied, 238 Ala. 462, 191 So. 640 (1939), plaintiff's wife was an invitee in defendant's store when she was struck by a rock thrown by a boy who had been forcibly removed by the storekeeper. The Court stated the rule of law, as follows:
"The true rule applicable to this case and the facts as hereinabove stated is: To make one answerable to an invitee for failing to furnish protection to the invitee upon his premises from the unlawful conduct of an outsiderthird personsuch an one so sought to be held, must have seen, or known, or circumstances at the time must be such as to make it reasonably appear that preventive effort was necessary to protect its invitee. Not only this, but the owner of the premises must have the present ability to furnish protection, or realizing the danger, and lacking the ability to furnish protection, if such invitee was unaware of his impending peril, he should warn the invitee of the danger, so that the latter might take steps to avoid injury."
*211 In a subsequent decision, this Court has pointed to "foreseeability" as the key:
"Negligence alone does not afford a cause of action. Liability will be imposed only when negligence is the proximate cause of injury; injury must be a natural and probable consequence of the negligent act or omission which an ordinarily prudent person ought reasonably to foresee would result in injury. If, between the alleged negligent act or omission and the injury, there occurs an independent, intervening, unforeseeable event, the causal connection between the alleged negligence and the injury is broken. Mobile City Lines, Inc. v. Proctor, 272 Ala. 217, 130 So.2d 388 (1961)....
"The key here is foreseeability. This court has held many times that a person, who by some act or omission sets in motion a series of events, is not responsible for consequences of intervention of another agency, unless at the time of his original act or omission, the act of the intervening agency could reasonably be foreseen. If so, the causal chain is not broken. If the injury results from an independent intervening, efficient cause, not reasonably foreseeable, the original negligent act or omission is not the proximate cause of injury...."
Vines v. Plantation Motor Lodge, 336 So.2d 1338, 1339 (Ala.1976).
In City of Mobile v. Largay, 346 So.2d 393 (Ala.1977), this Court determined that there was no liability because the criminal act by a third party was not reasonably foreseeable. See also, Berdeaux v. City National Bank of Birmingham, 424 So.2d 594 (Ala. 1982).
Latham contends that this Court should adopt as a rule of law the provisions of the Restatement (Second) of Torts § 344 (1965), specifically subsection (f) thereof:
"Business Premises Open to Public: Acts of Third Persons or Animals.
"A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to
"(a) discover that such acts are being done or are likely to be done, or
"(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.
"* * *
"(f) Duty to police premises. Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection."
In other jurisdictions there has been a divergence of opinion on the proper rule to apply when the criminal act of a third person injures an invitee. See Annotation: Comment NotePrivate Person's Duty and Liability for Failure to Protect Another Against Criminal Attack by Third Persons, 10 A.L.R.3d 619 (1966).
Latham cites to us several cases from other jurisdictions which he says should be followed in his case. Winn-Dixie Stores, Inc. v. Johnstoneaux, 395 So.2d 599 (Fla. Dist.Ct.App.1981); Medina v. 187th St. Apartments Ltd., 405 So.2d 485 (Fla.Dist.Ct. App.1981); Taylor v. Centennial Bowl, Inc., 65 Cal.2d 114, 52 Cal.Rptr. 561, 416 P.2d 793 (1966); Morgan v. Bucks Associates, 428 F.Supp. 546 (E.D.Pa.1977); Butler v. Acme Markets, Inc., 89 N.J. 270, 445 A.2d 1141 (1982).
*212 The appellees take each case cited by Latham and argue, as follows:
"In Winn Dixie Stores, Inc. v. Johnstoneaux, 395 So.2d 599 (Fla.App.1981). The plaintiff was robbed as she entered a store from a common area parking lot. This store was located in a `high crime' area of north Miami and the Court held that there was a question of fact on the liability of the defendant;
"`Because of the extensive evidence concerning the immediate past history of many similar occurrences in the immediate vicinity, and thus their future foreseeability, we reject Winn Dixie's contention that it was entitled to a directed verdict in its favor below.'
"In Medina v. 187th Street Apartments Ltd., 405 So.2d 485 (Fla.App.1981), the plaintiff was assaulted in a parking lot of an apartment complex. A directed verdict was reversed because the evidence showed the following:
"`At trial, the apartment complex manager indicated that he had actual knowledge that persons had been mugged in the complex. A police officer testified that ... he would classify the apartment as a high crime area.
"The basis of the duty recognized in Florida lies in the fact that the plaintiff has to allege and prove that the landowner had actual or constructive knowledge that prior similar criminal acts were committed upon invitees. Relyea v. State, 385 So.2d 1378 (Fla.App.1980).
"The plaintiff has also cited Morgan v. Bucks Associates, 428 F. 546 (E.D.Pa. 1977) in which an invitee was assaulted in a shopping center parking lot. The Court recognized a duty to provide protection because in the one year prior to this incident, there had been 77 car thefts and 15 more attempted car thefts from this parking lot.
"In Taylor v. Centennial Bowl, Inc. [65 Cal.2d 114, 52 Cal.Rptr. 561], 416 P.2d 793 (1966) an even more drastic situation was present. The defendants not only operated a bowling alley which was the subject of 273 police calls and 160 arrests in the six month period prior to the incident, but the defendants also knew of many previous assaults on the premises. Additionally, the defendants knew that the particular assailant had previously threatened the plaintiff and was waiting for her in the parking lot.
"Finally, the plaintiff's attorney cites Butler v. Acme Markets, Inc. [89 N.J. 270], 445 A.2d 1141 (1982). In that particular case the Court noted that there had been 7 muggings on the defendant's premises within a year's time, 5 of which occurred in the evening hours during the four months preceding the attack on the plaintiff. As noted by the Court, the basis of the decision establishing liability was that the plaintiff was a customer in a high crime area where there had been a history of persistent attacks.
"These cases are not applicable to the present situation. The plaintiff completely failed to produce any evidence that would bring this case within this theory of liability even if this Court should choose to establish such a theory."
Latham, on the other hand, argues that there was more than sufficient evidence before the trial court to allow one to reasonably draw an adverse inference on the issue of notice on the part of the defendants and thus, that the granting of the motions for directed verdict was error. He contends that the act of hiring security personnel itself gave rise to an inference that the defendants foresaw the possibility of activity on the part of third persons. He also directs our attention to testimony of the mall manager which he claims shows that the defendants were aware of a previous theft of property as well as the abduction of another mall employee from the mall parking lot on a previous occasion. Latham also contends that whether or not the providing of one security guard to protect against such acts was sufficient to discharge the duty owed an invitee would, according to the restatement view, be a question of fact for the jury.
Further, Latham contends that he introduced evidence that the defendants had actual notice of the existence of a potentially dangerous situation in that a crowd of people *213 was present in the parking lot at 1:00 a.m. on the morning of the incident, and yet the security guard failed to take any action to reduce the danger. He contends that the security guard, on prior occasions, had called the Tuscaloosa police department to disperse unruly crowds in the parking lot. Latham asserts that these facts would reasonably give rise to an inference that the security guard was negligent in not doing so on the occasion when he was injured.
Latham further contends that the facts that Ruby Tuesday's was the only shop open at the hour that he was injured, and that Tuesday night is a special night for that tavern, with larger crowds attending than usual, both give rise to the inference that the security guard's attention should have been focused primarily on that particular area of the mall and the adjacent parking lot. He sums up his argument thusly:
"Collectively, this evidence, when construed most favorably to the plaintiff, is more than sufficient to give rise to a reasonable inference that the defendants knew or should have known about the dangerous condition that existed in an area over which they exercised control, and thus the granting of the directed verdict was error."
The trial judge, in ruling on the motions for directed verdict, stated for the record his view of the development of the Alabama law in this area. He was convinced that a directed verdict was appropriate. It appears that the trial judge relied heavily on a decision of the Tennessee Supreme Court, Cornpropst v. Sloan, 528 S.W.2d 188 (Tenn. 1975). The facts in that case are strikingly similar to those in this case. In Cornpropst, an assailant attacked a woman shopper in the parking lot of a shopping mall. The attack occurred at night and there were no security guards posted in the lot. Prior to this attack, there had been various other assaults and acts of violence either on the premises or in the general vicinity. She sued the mall owner and the owners of the stores in the mall for a failure to provide adequate protection from the criminal acts of third parties.
The Tennessee court noted that under the common law there was no duty whatsoever to protect others from criminal acts of third parties. The court noted that in establishing such a duty, it would be very hard to determine when the duty arose, what measures would discharge the duty, and whether acts of the defendants would be the proximate cause of the injury. The Court opined:
"In our opinion it is a mistake to equate the duty of shopkeepers with respect to criminal acts with the duty of shopkeepers with respect to careless acts. Section 344 of the Restatement of Torts (Second) places both acts in exactly the same category in comment f.
"* * *
"In our opinion the appropriate rule applicable to this case is as follows: There is no duty upon the owners or operators of a shopping center, individually or collectively, or upon merchants and shopkeepers generally, whose mode of operation of their premises does not attract or provide a climate for crime, to guard against the criminal acts of a third party, unless they know or have reason to know that acts are occurring or about to occur on the premises that pose imminent probability of harm to an invitee; whereupon a duty of reasonable care to protect against such act arises.
"Assuming arguendo, that the complaint in this case states a cause of action upon which relief could be granted, we would dismiss the lawsuit for another reason. The facts alleged ... establish an efficient, intervening and unforeseeable cause for the injury sustained by Marie Cornpropst [the plaintiff]. The minds of reasonable men cannot differ but that the sudden act of [the third party], which could not have been prevented or deterred by the exercise of reasonable care on the part of the shopping center merchants, was the sole proximate legal cause of harm to Marie Cornpropst. Lancaster v. Montesi, 216 Tenn. 50, 390 S.W.2d 217 (1965)." *214 Cornpropst v. Sloan, 528 S.W. 188, 197, 198 (Tenn.1975).
The key to this appeal is: "Was the criminal conduct foreseeable"?
The trial judge was of the opinion that Latham failed to introduce evidence to show that the defendants knew, or had reason to know from past experience, that there was a likelihood of conduct on the part of a third person such as Stone or Hallman which would endanger the invitee. After reviewing the facts in the record, we uphold his decision in this case.
We hold as a matter of law that under the facts of this case, the criminal assault upon Latham in the parking lot was not reasonably foreseeable.
Consequently, we affirm the judgment of the trial court.
AFFIRMED.
TORBERT, C.J., and SHORES and BEATTY, JJ., concur.
JONES, J., concurs specially.
JONES, Justice (concurring specially).
I would not hesitate, in an appropriate case, to adopt the Restatement of Torts (Second), § 344. I agree with the trial judge that the strongest inference of the plaintiff's evidence, in the instant case, did not invoke § 344.