Brian C. **FACEMIRE**, et al., Plaintiffs,

v.

**KONOVER MANAGEMENT SOUTH,** et al., Defendants.

Civ. A. No. 91–0685–AH–S.

United States District Court,
S.D. Alabama, S.D.

Oct. 21, 1992.

Motion for Reconsideration
Granted Dec. 30, 1992.

James W. Killion, Killion & Vollmer, Cecily Kaffer, Harry Pond, IV, Kaffer & Pond, Frank G. Taylor, Peter V. Sintz, Sintz, Campbell, Duke & Taylor, and Michael Gillion, Mobile, Ala., for defendant/movants.

David F. Daniell, Richardson, Daniell, Spear & Upton, Mobile, Ala., for plaintiffs.

## ORDER

HOWARD, Chief Judge.

This cause is before the Court on Defendants' motions for Summary Judgment.

[Docs. 36, 43, 46]. Brian Christopher Facemire was shot while intervening in an argument in the parking lot at the Mobile Festival Center following the Sky Show '90 fireworks that took place there on July 4th, 1990. He and his wife Nickie Lynn Facemire (both hereinafter referred to as "Facemire") filed this negligence action in the Circuit Court of Mobile County against Konover Management South, Konover Mobile, Inc., Konover Mobile Festival Centre Limited Partnership ("Konover"), Resolution Trust Corporation ("RTC") as receiver of Home Savings Association of Kansas City,[1] Security Technical Services, Inc. ("STS"), Julian Trussel, and Capitol Broadcasting Corporation ("CBC").[2] On June 13, 1991 RTC filed a notice of removal in the United States District Court for the District of Columbia pursuant to 12 U.S.C. § 1441a(*l*)(3), and on August 8, 1991 that court, *sua sponte*, transferred this action to the Southern District of Alabama. [Doc. 1]. On August 27, 1992 this Court stayed this action pending certification of a question of Alabama law to the Alabama Supreme Court. On October 5, 1992, the Alabama Supreme Court, in the exercise of its discretion, declined to answer the question certified. Accordingly, this Court hereby LIFTS the stay heretofore applicable to this action. Also before the Court are Plaintiffs' motion to remand, [Doc. 66], and the motion of Defendants Konover, RTC and Trussel for leave to file a third-party complaint against STS. [Doc. 67]. For the reasons that follow, Defendants' motions for summary judgment are hereby DENIED. Plaintiffs' motion to remand is DENIED. With regard to the motion of Defendants Konover, RTC and Trussel for leave to file a third-party complaint against STS, the Court notes that this motion properly should seek leave to file a *cross-complaint* against STS, and subject to this condition, the motion is hereby GRANTED.

## FINDINGS OF FACT

CBC wholly owns and operates WKSJ, a Mobile country radio station. Since 1987, WKSJ had organized and promoted the "Sky Shows" as a service to the City of Mobile. WKSJ provided security for the

---

**1.** Plaintiffs originally sued the Home Savings Association of Kansas City. RTC was substituted as the proper party on May 29, 1991 by the Circuit Court of Mobile County. *See* 12 U.S.C. § 1441a(*l*)(2).

**2.** On July 17, 1992 this Court granted Defendant Capitol Broadcasting Corporation's motion for summary judgment. [Doc. 64–65].

area immediately surrounding the fireworks display to insure that no bystanders would be injured by the fireworks. WKSJ did not undertake to provide any security for the Festival Centre parking lot or any area surrounding the Festival Centre.

The Mobile Festival Centre had sponsored the Sky Shows in the three years prior to 1990. Those previous shows took place without any significant violence or altercations. Around 30,000 persons were in attendance in and around the Festival Centre at these prior shows, although there were at least 10,000 people actually on the premises at those shows. In 1989, the Centre employed some 15–20 security personnel during the show.

On December 11, 1989 the Centre renewed a contract with defendant STS to provide security for the Centre. The general manager of the Centre at the time, Fluffy Escobio, signed the contract on behalf of the Centre. Paragraph ten of the contract stated that STS guards were independent contractors, and not employees of the Centre in the performance of their duties. However, at the actual Sky Show the STS guards received their instructions from both Escobio and Defendant Trussel. Ownership of the Centre passed on June 29, 1990 from the Home Savings Association of Kansas City to Konover. Defendant Trussel was employed by Home Savings as a consultant/manager of the Centre. On June 29, 1990 he officially became an employee of Konover as general manager of the Centre. Escobio thereafter reported directly to Trussel, but continued to exercise some management functions at the Centre.

In May, 1990 Trussel decided to hire six (6) security guards from STS for the 1990 fireworks. Escobio vainly urged Trussel to increase the amount of security to an amount comparable to that of previous Sky shows. Escobio's concerns over the security cutbacks centered on an increased incidence of violence and vandalism at the Centre following the opening of the Movies 10 cinema in 1988. Trussel made this decision without seeking STS' input, and in fact rejected their advice that the reduced security would be inadequate for the number of people expected to attend Sky Show 90.

Under the arrangement with STS, only two of the security guards would carry firearms, and two other guards would carry walkie-talkies. The Centre hired STS to check doors at the Centre, to make certain there were no break-ins at the Centre or into automobiles parked there. STS guards were to report any criminal activity to the Mobile police. The guards were also to be on the lookout for persons drinking alcohol and shooting fireworks. STS did not participate in the planning of Sky Show 90. Konover was responsible for payment to STS for its services at Sky Show 90. The Mobile Police Department provided officers at the exits of the Festival Centre. Defendant Trussel recalled that there were between 7 and 9 Police Officers stationed at various times and places at the Centre during Sky Show 90, and an STS employee, William Hubbard, also saw several police officers at the Festival Centre at Sky Show 90.

On August 4, 1990, at approximately 10:00 P.M., Brian Christopher Facemire was shot by Curtis Wright in the parking lot of the Mobile Festival Centre as he attempted to stop an argument between Wright and another person. Facemire was there to watch a fireworks display billed as "Sky Show 90." The shooting occurred in the portion of the Festival Centre parking lot located directly in front of Phar–Mor discount store after the fireworks display had ended.

Between 30 and 45 minutes prior to his being shot, Facemire saw a man running through the crowd waving a gun, but Facemire did not know whether the individual he saw waving the gun was Curtis Wright. Several spectators recalled that in that same time period, three males dancing on top of an automobile quarrelled with some other males in a pickup truck, and one of the dancers entered the automobile and emerged brandishing a gun. One of the spectators, Chris Gartman, sought out a security guard in the parking lot.

Gartman located a security guard in front of the Movies 10 theater in the parking lot and informed him of the incident. Gartman returned to the place where he saw the gun-toting male. Ten to fifteen minutes passed, no security showed up, and the male continued to display the gun. Gartman then ran to Montlimar Drive, off the parking lot, and informed traffic police of the incident. Thereafter, the police arrived, and the gun and its possessor fled. Another one of the spectators, Andrew Conner, ran into "some" security guards and informed them that he had met a man

who reported "an incident involving a black man with a gun". They replied that it was not their department and walked off. STS admits that one of its guards, Sgt. Hubbard, was notified by a witness that a man was waving a gun in the crowd. Hubbard then took the witness to Mobile police stationed at the Center to describe the man with the gun. Hubbard also notified all the STS guards of the gun. This took place around 20 minutes before the Facemire shooting. Ten minutes before the shooting, an unidentified STS guard informed Defendant Trussel that a man had been spotted carrying a gun at the Centre.

## CONCLUSIONS OF LAW

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). "A factual dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Technologies, Inc.*, 882 F.2d 993, 996 (5th Cir.1989) (*citing Anderson, supra*, 477 U.S. at 248, 106 S.Ct. at 2510).

The basic issue before the Court on a motion for summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson, supra*, 477 U.S. at 251–252, 106 S.Ct. at 2511–12. "[T]he moving party has the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodge[s] must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Where

the nonmoving party, as here, bears the burden of proof at trial, the burden on the moving party may be discharged by 'showing'—that is, by pointing out to the District Court—that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Once the movant satisfies its initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmovant *to* "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita, supra*, 475 U.S. at 586–87, 106 S.Ct. at 1356 (*quoting* Fed.R.Civ.P. 56(e)) (emphasis removed) (internal quotation marks omitted); *Anderson, supra*, 477 U.S. at 250, 106 S.Ct. at 2511. Otherwise stated, the nonmovant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).[3] "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita, supra*, 475 U.S. at 587, 106 S.Ct. at 1356 (citation omitted); *cf. Anderson, supra*, 477 U.S. at 248, 106 S.Ct. at 2510. The moving party is likewise entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing of an essential element of the case. *Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 636 (11th Cir.1991).

■ This Court has subject matter jurisdiction over this action pursuant to 12 U.S.C. § 1441a(1)(1) (West Supp.1992). Plaintiffs in this action are citizens of Alabama, the three Konover defendants are citizens of Florida, RTC is a corporation organized under the laws of the United States of America, and Trussel and STS are citizens of Alabama. While this is not a traditional diversity of citizenship action, as far as determining the governing substantive law is concerned the Court applies Alabama law based on the diversity-type jurisdiction conferred by the RTC's presence in this action.

Plaintiffs' third amended complaint states claims based on negligence (counts one and three) and wantonness (counts two and four). [Doc. 13]. Specifically, Plaintiffs claim that:

> burden of proof at trial. *Clark, supra*, 929 F.2d at 607.

---

**3.** The shifting burden from movant to nonmovant at summary judgment described above applies regardless of which party will bear the

A. Defendants negligently [and wantonly] failed to properly provide adequate security for the event despite prior knowledge of the propensity for criminal violence.

B. Defendants were negligent [and wanton] in failing to properly manage the premises to provide supervision of a crowd with a known propensity for criminal violence;

C. Defendants were negligent [and wanton] in failing to properly supervise the invitees assembled for the Skyshow 90;

D. Defendants were negligent [and wanton] in failing to warn the Plaintiff of the dangerous propensity of the crowd known to the Defendants and of the fact that adequate security would not be provided.

E. Defendant [STS] was further negligent [and wanton] in failing to properly train its personnel in providing security to the invitees assembled for the Skyshow 90.

F. Defendant [STS] was further negligent [and wanton] in failing to advise Konover [and] Trussell [ ] as to the adequate amount of security required for Skyshow 90.

Defendants STS, Konover, RTC and Trussel argue that the Facemire shooting was not foreseeable, and that they "did not know, nor did they have reason to know, that acts were occurring or about to occur" at the Festival Centre "that posed imminent probability of harm to" Plaintiffs. Brief of Defendants Konover, RTC & Trussel in support of motion for summary judgment at 27 [Doc. 47]; Brief of Defendant STS in support of motion for summary judgment at 3–4 [Doc. 44]. Thus, they argue that they did not owe Plaintiffs a duty of reasonable care. Plaintiffs counter that Defendants "had both actual [and] constructive notice that criminal activity was occurring or about to occur such that they had a duty of reasonable care to protect" Facemire, in that Defendants knew about increased criminal activity at the Centre in general and specifically about a black male openly displaying a gun just prior to the shooting. Plaintiffs' brief in support of motion for summary judgment at 14 [Doc. 62].

■ The Alabama Supreme Court has recently reaffirmed that "it is difficult to impose liability on one person for an intentional criminal act by a third person." *Young v. Huntsville Hosp.*, 595 So.2d 1386, 1389 (Ala.1992) (*quoting CIE Service Corp. v. Smith*, 460 So.2d 1244, 1247 (Ala. 1984)). Thus, the general rule in Alabama is that "*absent special relationships or circumstances*, a person has no duty to protect another from criminal acts of a third person." *Moye v. A.G. Gaston Motels, Inc.*, 499 So.2d 1368, 1370 (Ala.1986) (italics supplied).[4]

■ However, absent "special relationships or circumstances", a defendant will still owe an invitee a duty to protect if he "knew, or had reason to know from past experience, that there was a likelihood [or probability] of conduct on the part of a third person ... which would endanger the invitee."[5] *Latham v. Aronov Realty Co.*, 435 So.2d 209, 214 (Ala.1983); *see also Nail v. Jefferson County Truck Growers*, 542 So.2d 1208, 1211 (Ala.1988). In *Moye, supra*, the Alabama Supreme Court framed the issue as whether defendant had a duty to protect invitees from criminal attack because they possessed actual or constructive "specialized" knowledge that criminal activity which could endanger an invitee was a probability. *Moye, supra*, 499 So.2d at 1372; *see Henley v. Pizitz Realty Co.*, 456 So.2d 272, 277 (Ala.1984); *Frazier v. Laborers Int. Union of North America, Local. No. 559*, 502 So.2d 743, 746 (Ala.1987).

■ Therefore, the question is whether Defendants possessed actual or constructive "specialized" knowledge that criminal activity which could endanger an invitee was a probability. In assessing whether Defendants possessed constructive knowledge that criminal activity that could endanger an invitee was a probability, the Court notes that the cases emphasize the importance of whether a defendant "had reason to know from past experience[ ] that there was a likelihood of conduct on the

---

4. Plaintiffs have not argued that "special relationships or circumstances" exist here, and indeed such an argument would be bound to fail. The Alabama Supreme Court has been very reluctant to find "special relationships or circumstances", and has found them in only one case, *Young, supra.*

5. The criminal acts of the third party must pose an imminent probability of harm to an invitee. *See Latham v. Aronov Realty Co.*, 435 So.2d 209, 213 (Ala.1983) (*quoting Cornpropst v. Sloan*, 528 S.W.2d 188, 197–98 (Tenn.1975)).

part of a third person ... which would endanger the invitee." *Latham, supra.* The Alabama Supreme Court has consistently refused to recognize general patterns of prior criminal activity or violence as giving rise to such foreseeability as to constitute an imminent probability of harm to the invitee.[6] *Webster v. Church's Fried Chicken,* 575 So.2d 1108, 1109 (Ala.1991) (marshaling cases); *Young, supra,* 595 So.2d at 1388, n. 4 (same). As a result, the Court holds that whatever knowledge of criminal activity at the Centre prior to the date of the incident in question Defendants possessed, it was not sufficient to meet the extremely high standards required by Alabama case law. *See generally Webster, supra.*

■ As to whether Defendants on the day of the incident in question had *actual* "specialized" knowledge of criminal activity likely to endanger Plaintiffs, the Court finds that *Moye, supra,* provides the controlling rule of law in this action. The dispositive question before the Court is whether actual knowledge that a man with a gun was at large in the parking lot of the Festival Centre constitutes "specialized knowledge" that criminal activity which could endanger an invitee, namely Facemire, was a probability. If so, the shooting was reasonably foreseeable such that a duty to protect Facemire arose upon Defendants' acquisition of such knowledge. *Latham, supra,* 435 So.2d at 211, 214. Construing all inferences in favor of Facemire, as the Court must, the Court concludes that the man seen with a gun, whose activity was reported to Defendants, may possibly have been Curtis Wright, who later shot Facemire. The Court finds this to be "specialized knowledge" as the Alabama Supreme Court used that term.

The Court further finds that Defendants' knowledge that a man with a gun was loose in the parking lot of the Festival Centre is sufficient to impose a duty to protect Facemire, and other invitees, from criminal activity that may follow in all likelihood. Bearing in mind that STS, when warned that a black male had been observed with a gun responded that it was not their department, and that both STS and Defendant Trussel knew prior to the shooting that a man carrying a gun was loose on the premises, the Court finds that Defendants had actual knowledge of possible criminal activity during Sky Show 90. *Cf. Latham, supra,* 435 So.2d at 213–14 (no evidence of actual knowledge of criminal conduct on the part of a third person that would likely endanger invitee). The Court is unprepared to hold, as a matter of law, that Defendants' knowledge that a person in possession of a gun was roaming the Festival Centre could not give rise to a probability or likelihood of criminal activity that could endanger an invitee. *See Frazier, supra,* 502 So.2d at 746. Accordingly, Defendants' motion for summary judgment is DENIED.

### Remaining Motions

Also before the Court are Plaintiffs' motion to remand, [Doc. 66], and the motion of Defendants Konover, RTC and Trussel for leave to file a third-party complaint against STS. [Doc. 67]. Plaintiffs have failed to present valid grounds for remanding this action to State court. Accordingly, Plaintiffs' motion to remand is due to be, and hereby is, DENIED.

With respect to the motion of Defendants Konover, RTC and Trussel for leave to file a third-party complaint against STS, the Court must follow Federal Rule of Civil Procedure 15(a), which authorizes the Court to grant leave to amend when justice so requires. The Court deems such motion to be a motion to file a cross-claim and hereby GRANTS the motion to amend.

### ORDER ON RECONSIDERATION

■ This cause is before the Court on Defendant Resolution Trust Corporation's ("RTC") motion to reconsider its October, 1992 Order denying Defendants' motions for summary judgment. *See* page 1466 (Howard, C.J.). For the reasons that follow, RTC's motion to reconsider is GRANTED.

RTC asserts that because the Home Savings Association of Kansas City, in whose shoes it stands, had divested itself of all interest and involvement in the Festival Centre on June 26, 1990, it therefore could

---

**6.** In *Moye, supra,* the Court noted with regard to foreseeability that "by consistently affirming summary judgments and approving directed verdicts in favor of defendants in cases of this kind, this Court has rejected the idea that a difference of opinion in the adequacy of lighting, the presence of security guards, or the number of security guards present at a particular location constitutes a legal basis for denial of a summary judgment or a directed verdict". *Moye, supra,* 499 So.2d at 1370.

not have possessed actual knowledge that criminal activity which could endanger an invitee was a probability on July 4, 1990, when Plaintiff Brian Facemire was shot at the Centre. The Court agrees.[1]

Plaintiffs' third amended complaint states claims based on negligence (counts one and three) and wantonness (counts two and four). [Doc. 13]. Specifically, Plaintiffs claim that:

A. Defendants negligently [and wantonly] failed to properly provide adequate security for the event despite prior knowledge of the propensity for criminal violence.

B. Defendants were negligent [and wanton] in failing to properly manage the premises to provide supervision of a crowd with a known propensity for criminal violence.

C. Defendants were negligent [and wanton] in failing to properly supervise the invitees assembled for the Skyshow 90.

D. Defendants were negligent [and wanton] in failing to warn the Plaintiff of the dangerous propensity of the crowd known to the Defendants and of the fact that adequate security would not be provided.

E. Defendant [STS] was further negligent [and wanton] in failing to properly train its personnel in providing security to the invitees assembled for the Skyshow 90.

F. Defendant [STS] was further negligent [and wanton] in failing to advise Konover [and] Trussell [ ] as to the adequate amount of security required for Skyshow 90.

The Court FINDS that on June 26, 1990 the Home Savings Association of Kansas City, and hence RTC, divested itself of all interest in the Festival Centre, and all participation in its management. The wording of Plaintiff's complaint indicates that only paragraph A, *supra*, could apply to conduct occurring prior to June 26, 1990, that is, to acts of the Home Savings Association of Kansas City, and hence the RTC. Therefore, the Court's holding that Defendants on July 4, 1990 possessed actual knowledge that criminal activity which could endanger Plaintiffs was a probability cannot apply to the RTC. Accordingly, RTC's motion to reconsider is GRANTED, and RTC's motion for summary judgment is GRANTED.

---

1. The Court notes that RTC's motion for summary judgment argued that it did not possess actual knowledge of criminal activity at the Festival Centre, but RTC now argues that it could not have possessed such knowledge at the time of the shooting.