706 So.2d 1220 (1997)
WHATABURGER, INC.
v.
Robert ROCKWELL, Jr.
2950891.
Court of Civil Appeals of Alabama.
May 30, 1997.
Rehearing Denied July 11, 1997.
*1222 William H. Sisson, Vincent A. Noletto, Jr., and Thomas H. Nolan, Jr., of Brown, Hudgens, P.C., Mobile, for appellant.
Toby D. Brown, Kelli D. Taylor, and David G. Wirtes, Jr., of Cunningham, Bounds, Yance, Crowder & Brown, Mobile, for appellee.
MONROE, Judge.
Whataburger, Inc., appeals from the judgment entered on a jury verdict awarding Robert Rockwell, Jr., $50,000 as compensatory damages for injuries he received in a fight at a Whataburger restaurant.
The evidence adduced at trial tended to show the following. While making a trip to Florida in September 1994, Rockwell and his wife, Billie Jo, stopped at a Whataburger restaurant in Chickasaw to get some food to take with them. Rockwell went inside to order and then sat down at a booth to wait for his food. While he was waiting, Rockwell said, he looked around the restaurant and saw a group of three young men eating at another booth. One of the young men noticed Rockwell looking at them and yelled across the restaurant to Rockwell, asking if he had "a fucking problem." Rockwell said, "No, but apparently you do." The young men continued to verbally harass Rockwell until a confrontation developed, with each side threatening the other. The Whataburger manager, Violet Stringfellow, told the young men and Rockwell that if they were going to fight, they needed to "take it outside." The point at which she told them to go outside was disputed at trial.
Rockwell said that before he went outside, he asked Stringfellow several times to telephone the police. The point at which Stringfellow summoned the police is also in dispute. Once Rockwell and the three young men were outside, a fight broke out. During the course of the fight, Rockwell was hit in the head with a brick and sustained serious injuries.
In his complaint, Rockwell alleged that his injuries were proximately caused by negligence on the part of Whataburger in failing to timely respond to his request for police protection. Whataburger contends that it owed no duty to protect Rockwell from the criminal acts of a third party; therefore, it argues, the trial court should have granted its motion for a summary judgment and its subsequent motion for a directed verdict.
An appellate court reviews a motion for a directed verdict by the same standard the trial court uses in determining whether to grant or to deny the motion. "`[W]hen reviewing the trial court's ruling on the motion [for a directed verdict], we determine whether there was sufficient evidence to produce a conflict warranting jury consideration. And, like the trial court, we must view any evidence most favorably to the nonmovant.'" Triple J Cattle, Inc. v. Chambers, 621 So.2d 1221, 1224 (Ala.1993), quoting Ogle v. Long, 551 So.2d 914, 915 (Ala.1989); Bussey v. John Deere Co., 531 So.2d 860, 863 (Ala. 1988).
If this were a case in which Rockwell sought to hold Whataburger liable merely because the fight occurred on its premises, *1223 we would agree with Whataburger's contention that it owed no duty to protect Rockwell from the criminal acts of a third party. However, Whataburger's argument fails to take into account the issue actually raised by Rockwell, that is, whether Whataburger's actionor inactionled to his injuries. In other words, the issue is not whether Whataburger owed a duty to Rockwell to protect him from the criminal acts of the three young men, but whether Whataburger itself negligently put Rockwell in harm's way.
As in all negligence cases, the plaintiff has the burden of proving (1) that the defendant owed him or her a duty of care, (2) that the defendant breached that duty, and (3) that the plaintiff was injured as a result of the breach. Morris v. Merritt Oil Co., 686 So.2d 1139 (Ala.1996). "`The ultimate test of the existence of a duty to use due care is found in the foreseeability that harm may result if care is not exercised.'" Id., quoting Ledbetter v. United American Insurance Co., 624 So.2d 1371, 1373 (Ala. 1993).
The Alabama Supreme Court has discussed a merchant's duty of care in a situation like the one in the present case:
"`In our opinion it is a mistake to equate the duty of shopkeepers with respect to criminal acts with the duty of shopkeepers with respect to careless acts....
"`....
"`In our opinion the appropriate rule applicable to this case is as follows: There is no duty upon the owners or operators of a shopping center, individually or collectively, or upon merchants and shopkeepers generally, whose mode of operation of their premises does not attract or provide a climate for crime, to guard against the criminal acts of a third party, unless they know or have reason to know that acts are occurring or [are] about to occur on the premises that pose imminent probability of harm to an invitee; whereupon a duty of reasonable care to protect against such act arises.'"
Latham v. Aronov Realty Co., 435 So.2d 209, 213 (Ala.1983) (emphasis in original); quoting Cornpropst v. Sloan, 528 S.W.2d 188, 197-98 (Tenn.1975), overruled by McClung v. Delta Square Ltd. Partnership, 937 S.W.2d 891 (Tenn.1996).[1]
Although the existence of a duty is generally a question of law to be determined by the trial court, Garner v. Covington County, 624 So.2d 1346 (Ala.1993), "`it is not error to submit the question to the jury if the factual basis for the question is in sufficient dispute: to allow the trial court to determine such questions would undermine the traditional fact-finding function of the jury.'" Jones v. Blount County, 681 So.2d 202, 205 (Ala.Civ.App.1995), writ quashed, 681 So.2d 207 (Ala.1996), quoting Garner, supra, at 1350. If the facts upon which a duty depends are disputed, then "the factual dispute is for resolution by the jury." Jones, 681 So.2d at 205.
Rockwell presented evidence that the manager of Whataburger should have known a fight was about to break out, but rather than call the police, as required by the company's policy, told the four to "take it outside." There also was evidence that Rockwell asked the manager several times to call the police, but that she did not make the call until the group was outside and Rockwell was in imminent danger of being hurt. Exactly when Stringfellow called the police is in dispute, and the jury heard conflicting evidence as to when she made the telephone call *1224 to the police. Thus, whether the manager did in fact know that a fight was about to break out and that Rockwell was in imminent harm is a question of fact to be determined by a jury. Likewise, whether Whataburger owed a duty to Rockwell to protect him from harm is dependent upon the jury's answers to that question.
Clearly the parties presented conflicting evidence that warranted consideration by the jury; therefore, either a summary judgment or a directed verdict for the defendant would have been improper. The trial court properly denied Whataburger's motion for a summary judgment and its motion for a directed verdict.
Whataburger also contends that, even if a duty existed, it was entitled to a directed verdict because, it argues, Rockwell did not present substantial evidence of negligence, and did not prove that any alleged negligence on Whataburger's part was the proximate cause of Rockwell's injury. We note that the issues of negligence and proximate cause are normally questions of fact to be determined by a jury. Sparks v. Alabama Power Co., 679 So.2d 678 (Ala.1996); Dale v. Kelly, 620 So.2d 632 (Ala.1993); Sungas, Inc. v. Perry, 450 So.2d 1085 (Ala.1984).
From the evidence presented, the jury reasonably could have found that a fight between Rockwell and the three young men was foreseeable. The jury could have determined that the manager should have known a fight was about to break out; that she knew the restaurant's policy was to telephone the police in such a situation; and that she did not call the police in a timely manner, but instead sent Rockwell outside to fend for himself.
Based on these findings, the jury reasonably could have determined that the conduct of the three young men would result in harm to Rockwell. From that determination, the jury then could determine that the manager was negligent in failing to call the police immediately and that her negligence was the proximate cause of Rockwell's injuries. The issues of negligence and proximate cause were properly submitted to the jury, and the trial court correctly denied the motion for a directed verdict.
Whataburger also argues that it was entitled to a directed verdict on the basis that Rockwell was contributorily negligent as a matter of law. Once again, the issue of contributory negligence is generally one for the jury to decide. Jones v. Blount County, 681 So.2d at 206.
"`The question of whether the plaintiff is guilty of contributory negligence as a matter of law, and therefore one for the court to decide, arises only when the facts are such that all reasonable men must draw the same conclusion therefrom, and the question is for the jury when, under the facts and circumstances, reasonable minds may fairly differ upon the question of negligence.'"
Id. quoting Robertson v. Travelers Inn, 613 So.2d 376, 379 (Ala.1993).
Based on the evidence, as discussed above, we believe that reasonable minds may differ on whether Rockwell was contributorily negligent. Therefore, the issue of contributory negligence was properly submitted to the jury, and the trial court did not err in denying Whataburger's motion for a directed verdict based on contributory negligence.
As to issues of negligence, proximate cause, and contributory negligence, we note that jury verdicts are presumed to be correct. Eubanks v. Hall, 628 So.2d 773 (Ala.Civ.App.1993). An appellate court "will not reverse a judgment based on a jury verdict unless, after allowing all reasonable presumptions of correctness, [it concludes that] the preponderance of the evidence [is so decidedly] against the verdict ... as to clearly convince [the appellate court] that [the verdict] is wrong." Delchamps, Inc. v. Larry, 613 So.2d 1235 (Ala.1992). Based on the evidence presented, we cannot say that the jury's verdict is against the preponderance of the evidence or that the verdict is otherwise wrong.
The judgment of the trial court is affirmed.
AFFIRMED.
YATES, J., concurs.
*1225 ROBERTSON, P.J., concurs specially.
CRAWLEY and THOMPSON, JJ., dissent.
ROBERTSON, Presiding Judge, concurring specially.
I write specially to point out some important facts that the dissenting opinions fail to consider. Rockwell asked the manager of Whataburger to call the police several times after it became apparent that a "three on one" fight was imminent. The manager not only refused to call the police, apparently in violation of Whataburger's policy, but she also failed or refused to exert any effort to defuse the situation or to save Rockwell from impending harm; instead, she ordered him and his three assailants to go outside to fight, placing him in imminent danger. Surely, repeated requests by a customer/invitee to call police so as to prevent imminent danger creates a duty of care on the part of a business invitor. The factual issue of when the manager finally called the police was a question for the jury.
CRAWLEY, Judge, dissenting.
I must respectfully dissent from the majority opinion affirming the judgment in favor of Rockwell. The Alabama Supreme Court has very clearly limited the liability of a premises owner for the criminal acts of third parties. See Ex parte McRae's, 703 So.2d 351 (Ala. 1997), and the cases cited therein. "The general rule in Alabama [is] that absent special relationships or circumstances, a person has no duty to protect another from the criminal acts of a third person." McRae's, 703 So.2d at 351 (quoting Moye v. A.G. Gaston Motels, Inc., 499 So.2d 1368, 1370 (Ala. 1986)). Stated another way, a premises owner is under no duty to protect another from the criminal acts of a third person unless a special relationship or special circumstances create such a duty.
Moye is perhaps the case containing the most enlightening discussion of Alabama law concerning the liability of a premises owner for the criminal acts of a third party. In addition to stating the general rule most often cited in premises liability cases, Moye contains an explanation of the reason behind the court's reluctance to assign liability for the acts of another: the absence of (1) duty and (2) proximate cause. Moye, 499 So.2d at 1370. Duty and proximate cause are intertwined and dependent upon the element of foreseeability. Id.
According to the majority in Moye, Alabama law imposes "no initial legal duty upon [a] premises owner to protect against the criminal acts of a third party." Id. at 1371. Moye states an exception to that lack of duty: when the criminal activity is foreseeable. Id. (quoting Henley v. Pizitz Realty Co., 456 So.2d 272, 276 (Ala.1984)). When criminal activity is foreseeable, a special circumstance exists, which places a duty "to take reasonable precautions to protect invitees from criminal attack" on the premises owner. Id. (quoting Ortell v. Spencer Companies, 477 So.2d 299, 299 (Ala.1985)). "The number and frequency of prior criminal acts at the place where the injury occurred are used in determining whether a particular criminal act was reasonably foreseeable." Id. at 1372. As the court pointed out,
"[t]he number and frequency of prior criminal acts are objective, verifiable criteria. When the number and frequency of the crimes on the premises rises, and notice is shown on the part of the owner, then, and only then, would criminal activity be foreseeable."
Id. at 1372-73 (emphasis added).
Of the few cases in which our supreme court has indicated that liability would be warranted, two involved special relationships. See Thetford v. City of Clanton, 605 So.2d 835 (Ala.1992); Young v. Huntsville Hospital, 595 So.2d 1386 (Ala.1992). A third case in which the court found liability warranted is a "special circumstance" case because the circumstances leading up to the incident created in the premises owner the duty to protect the victim. See Nail v. Jefferson County Truck Growers Association, Inc., 542 So.2d 1208 (Ala.1989).
The plaintiff in Young was an sedated hospital patient who was sexually assaulted in her hospital room. Young, 595 So.2d at 1387. The court found that the hospital could be liable for the sexual assault on *1226 Young because of the special relationship the hospital had with her by virtue of her being sedated and dependent upon the hospital for protection. Id. at 1388-89. The court noted:
"The basis for the `special relationship' exception is Restatement (Second) of Torts § 315 (1966), which states:
"`There is no duty so to control the conduct of a third person as to prevent him from causing harm to another unless

"`....
"`(b) a special relationship exists between the actor and the other which gives to the other a right to protection.'
"Logically, the relationship between a hospital and a sedated or anesthetized patient would be covered under (b) above."
Id. at 1388 n. 3.
The victim in Thetford was an abused woman who was hiding from her abusive husband. Thetford, 605 So.2d at 837. The manager of the hotel cut the door chain of the victim's room and allowed the victim's husband access. Id. The victim left the hotel with her husband and he later fatally beat her. Id. at 838. The court noted that one major issue in the case was whether the death of the victim at the hands of her husband was foreseeable to the manager. Id. at 841.
"[I]t is evident that there is an issue of fact about whether [the manager] and [the hotel] knew that [the victim] was an abused wife who was hiding from her abuser. Thetford introduced sufficient evidence to entitle her to reach the jury. The fact that [the victim] notified the hotel that she had been beaten by her husband and was hiding from him for fear of additional abuse would permit a jury to conclude that the hotel manager could foresee another beating by the husband."
Id. However, the court also pointed out the "affirmative duty [of an innkeeper], stemming from a guest's rights of privacy and peaceful possession, not to allow unregistered and unauthorized third parties to be given access to the rooms of its guests." Id. at 838 (quoting Campbell v. Womack, 345 So.2d 96, 98 (La.Ct.App.), cert. denied, 347 So.2d 247 (La.1977)). As was the case with the hospital in Young, the hotel had a special relationship with the victim, i.e., the duty not to allow unauthorized guests access to the victim's room, that takes the case outside of the general rule that a premises owner is not liable for the criminal acts of third parties on its premises.
None of the facts in this case give rise to any special relationship between Rockwell and Whataburger. Unlike the sedated patient in Young, Rockwell was not dependent upon Whataburger for protection. Unlike the hotel in Thetford, Whataburger owed no special duty to Rockwell. Therefore, Rockwell cannot base Whataburger's liability on the special relationship exception stated in Moye.
In addition, the supreme court has indicated that premises owner liability for the criminal acts of third parties was warranted in another unique fact situation involving a shoot-out at the Jefferson County Farmer's Market (the "Market"). Nail v. Jefferson County Truck Growers Association, Inc., 542 So.2d 1208 (Ala.1989). The shoot-out was the culmination of several weeks of animosity between a holdover tenant at the Market and the new tenant of the property. Nail, 542 So.2d at 1210. The holdover tenant, William Nail, refused to vacate the area he had been leasing, located in Shed One, despite the termination of his lease. Id. The new tenant was the son of another tenant, who also rented space in Shed One, Billy Joe Keith. Id. The animosity between the two factions grew worse over a period of several weeks, and the market manager, Bert Swann, was notified of the problem. Id. Swann placed security in Shed One; however, on the day of the shoot-out, one of the security guards that patrolled the Market's gate had called in sick and the security guard assigned to Shed One replaced the sick guard, leaving Shed One without security. Id. Swann did not call in another guard. Id. On July 4, 1981, the Nail and Keith factions threw firecrackers into each other's produce stands. Id. Nail then fired a gun into the air, apparently attempting to break up the fray. Id. Billy Joe Keith, however, interpreted the gunshot as an attempt to fire upon him, and he shot *1227 Nail. Id. Nail returned fire. Id. Besides Nail and Keith, two others were injured. Id.
The court, using the same language from Latham v. Aronov Realty Co., 435 So.2d 209, 213 (Ala.1983), as the majority does, stated that, "in order for the plaintiff to recover in negligence, there must be evidence that the owner knew or had reason to know of a probability of conduct by third persons that would endanger the plaintiff." Nail, 542 So.2d at 1211. The court focused on the fact that the Market knew about the growing animosity between the Nail and Keith factions for several weeks. Id. As the court noted, the difference between the Nail case and the other cases in which summary judgments for the defendants had been affirmed was that in the other cases, the violent, criminal act "occurred without warning," instead of "ferment[ing] over a period of several weeks." Id. That difference made the criminal conduct in Nail foreseeable, and, therefore, Nail fell within the special circumstances exception stated in Moye. Id.
Apparently, the majority regards the fact that the Whataburger manager saw the verbal exchange that precipitated the physical altercation as the basis of its finding that the criminal act was foreseeable. I disagree. The situation in this case is unlike that in Nail. No long-term feud existed between Rockwell and his assailants. Instead, four patrons of Whataburger exchanged words, threats, and, ultimately, blows. All of this happened in a matter of minutes. The mere fact that the manager watched the situation develop does not make the resulting criminal act foreseeable for purposes of premises liability under the rationale expressed in Moye.
In fact, the duty imposed in a case involving the special circumstances of foreseeable criminal activity is a duty to take reasonable precautions. "Precaution" is defined as "care taken in advance" or "a measure beforehand to prevent harm or secure good." Wester's Ninth New Collegiate Dictionary (1985). Under the facts in Nail, for example, the Market knew of the growing problem between its tenants and had the opportunity to take measures before the July 4 confrontation to insure safety in Shed One. However, in the present case, Whataburger had no notice sufficient to take measures to prevent Rockwell and his three assailants from fighting. By the time the manager had notice of the impending altercation, the participants had already begun the events that would ultimately lead to Rockwell's injury. That is not the notice anticipated in Moye and is insufficient to give rise to a duty on the part of Whataburger.
I believe that the majority, in affirming the judgment for Rockwell, incorrectly applies a subjective standard in this case. As stated previously, our supreme court rejected the use of subjective criteria for determining when criminal conduct is foreseeable. Moye, 499 So.2d at 1373. The court noted that differences of opinion concerning such issues as the adequacy of lighting would not be sufficient for the denial of a motion for summary judgment or for directed verdict. Id. The incident that occurred in this case was not, as far as the evidence shows, foreseeable. Rockwell presented no evidence that Whataburger had a history of violent incidents on its property. This incident, like so many others, was sudden and occurred without warning. A few of the patrons of Whataburger took an apparent dislike to one another, the dislike was fueled by angry talk and the introduction of a weapon, and the result was a violent confrontation in which Rockwell was injured.
By determining that liability can and should rest on the determination that the Whataburger manager should have reacted more quickly or should have taken some step that she did not, the majority subjects a premises owner to liability based upon a subjective view of what could have been done. Much like the comparison of the appropriate amount of lighting in a given locale mentioned in Moye, the subjectiveness of this determination does nothing to create a clear understanding of the limited situations in which a premises owner is under a duty to protect his patrons. Instead, the exception to the general absence of duty stated in Moye is made to nearly swallow the rule. The result of the majority's approach is that if anyone on the premises speaks rudely or offensively to another, or even looks at another in the wrong way, the premises owner *1228 suddenly becomes what Alabama law says it is not, an insurer of its patron's safety. See, generally, Lowe's Home Centers, Inc. v. Laxson, 655 So.2d 943, 946 (Ala.1994). No matter what the premises owner may have done to prevent the incident and no matter how incident-free the establishment has been in the past, the owner will be liable for the result of any physical altercation on the premises.
None of the evidence in this case convinces me that it is any different from the many other cases where liability was determined to be unfounded. No special relationship exists in this case and no past criminal incidents created in Whataburger a duty to protect its patrons. Therefore, I must respectfully dissent.
THOMPSON, Judge, dissenting.
I believe that the trial court should have granted a directed verdict in favor of Whataburger. In order to properly support his negligence claim against Whataburger, Rockwell must have established that the defendant owed him a duty of care, that the defendant breached that duty, that Rockwell suffered loss or injury, and that the defendant's negligence was the actual and proximate cause of that loss or injury. John R. Cowley & Bros., Inc. v. Brown, 569 So.2d 375 (Ala.1990).
The dispositive issue in deciding whether a directed verdict should have been granted by the trial court is whether Whataburger owed a duty to Rockwell to protect him from the criminal acts of the three young men. "The determination as to the existence vel non of a duty resting upon a defendant is a question of law for the trial judge." Sungas, Inc. v. Perry, 450 So.2d 1085, 1089 (Ala.1984). I disagree with the majority that this case involves a factual question for the jury with regard to the existence of a duty. Under Alabama law, Whataburger had no duty to protect Rockwell from the criminal acts of third parties. See Moye v. A.G. Gaston Motels, Inc., 499 So.2d 1368 (Ala.1986).
Our Supreme Court has recognized that a duty may be imposed on a store owner to take reasonable precautions to protect invitees from criminal attack. Henley v. Pizitz Realty Co., 456 So.2d 272, 277 (Ala.1984). However, "[i]t is the general rule in Alabama that, absent special relationships or circumstances, a person has no duty to protect another from criminal acts of a third person." Moye v. A.G. Gaston Motels, Inc., 499 So.2d at 1370. The basis for the "special relationship or circumstances" exception is found in Restatement (Second) of Torts § 315 (1966), which states:
"There is no duty so to control the conduct of a third person as to prevent him from causing harm to another unless
"(a) a special relationship exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
"(b) a special relationship exists between the actor and the other which gives to the other a right to protection."
For the "special relationship" exception to apply in premises liability cases, there must be a relationship either between the premises owner and the third party or between the premises owner and the plaintiff. Young v. Huntsville Hospital, 595 So.2d 1386 (Ala. 1992)
There was clearly no existing relationship between Whataburger and the three young men that would have imposed a duty upon Whataburger to control their actions. Therefore, the first exception to the general rule would not apply.
The second "special relationship" exception is also inapplicable to the facts of this case. This exception to the general rule has been sparingly utilized by the courts of this state. In premises liability cases, it has been applied in rare situations where the invitee is highly dependent on the premises owner for his or her bodily protection, e.g., the situation of a hospital and an anesthetized patient. See Young, supra. I do not believe that Rockwell's status as a mere business invitee of the restaurant gives rise to such a duty under this exception.
Our Supreme Court addressed a situation almost identical to that presently before the court, in Douglas v. McDonald's Corp., 565 So.2d 137 (Ala.1990). In that case, Douglas was attacked by a group of assailants while *1229 eating at a McDonald's restaurant. He claimed that McDonald's had negligently or wantonly failed to provide him with a reasonably safe place while he was an invitee on the restaurant premises and had negligently or wantonly failed to provide police protection after being notified that Douglas had been threatened. The trial court entered summary judgments for the defendants; the Supreme Court affirmed, holding that no duty was breached. The supreme court relied on Bailey v. Bruno's, Inc., 561 So.2d 509 (Ala. 1990), and Williams v. First Alabama Bank, 545 So.2d 26 (Ala.1989).
Rockwell argues, as his theory of recovery, that Whataburger obtained "specialized knowledge" that served to impose upon it a duty to protect him as an invitee. A requirement of Rockwell's argument is that the store owner have "specialized knowledge" that criminal activity that could endanger an invitee is a probability. Stripling v. Armbrester, 451 So.2d 789 (Ala.1984). Therefore, it follows that foreseeability is a primary factor in applying this exception. As a practical matter, to establish the requisite degree of foreseeability essential to impose a duty to protect against criminal acts will almost invariably require evidence of prior criminal acts that had occurred on, or in the immediate vicinity of, the defendant's premises. For example, in Nail v. Jefferson County Truck Growers Ass'n, Inc., 542 So.2d 1208 (Ala.1988), a case Rockwell relies on, the defendant was found to have gained "specialized knowledge" when it received knowledge of "feuding" and tension between rival factions in its facility for several weeks before the plaintiff was injured there.
Rockwell presented no evidence relating to prior criminal incidents at Whataburger that would have put this defendant on notice that such criminal activity would be likely to occur. Although the testimony reveals that some of the employees of Whataburger recognized the three young men as regular customers, none testified to knowing of any previous acts of violence committed by any of the three.
The only knowledge Rockwell claims the employees of Whataburger possessed concerning any potential danger to him came as a result of the confrontation made the basis of this lawsuit. Rockwell asserts that the Whataburger manager had "actual or constructive knowledge" of a criminal activity that could endanger him and that this knowledge gave rise to a duty to protect. Rockwell relies on Facemire v. Konover Management South, 804 F.Supp. 1465 (S.D.Ala.1992). In Facemire, the United States district court held that a genuine issue of material fact existed to preclude a summary judgment for a shopping center defendant that had organized a fireworks display. The district court heard evidence that indicated that members of the organizer's hired security force had been told that a man with a gun was at large in the crowd, but that the security force had refused to take action to protect those attending the show. The situation presented in Facemire can be distinguished from that presented in the present case. In Facemire, the management of the defendant shopping center voluntarily assumed the duty to provide security for those in attendance at the fireworks show.[2] Whataburger never assumed any such duty on behalf of Rockwell. Additionally, the security guards in Facemire, according to the evidence presented, were informed that an armed man was among the crowd and refused to take action on this information to prevent the type of situation that arguably might have led to Facemire's being shot. In the present case, it is not asserted that the Whataburger manager actually refused to contact the police. In fact, it is undisputed that the police were called by the manager.
It is Rockwell's contention that had the Whataburger manager foreseen the potential harm sooner and called the police earlier, the police would have arrived in time to prevent the altercation in which Rockwell was injured. It is this failure to act promptly that Rockwell argues caused him to be injured and gives rise to Whataburger's liability.
*1230 The Alabama appellate courts have yet to find foreseeability based upon an impending assault theory, and I am not persuaded to do so based upon the facts in this case. Rockwell's argument is fraught with speculation. "Evidence which affords nothing more than speculation, conjecture or guess is wholly insufficient to warrant the submission of a case to the jury." Williams v. Palmer, 277 Ala. 188, 193, 168 So.2d 220, 224 (1964). To embrace Rockwell's argument is to depart widely from the prevailing law of this state and will serve to impose an undue burden upon our merchants.
Therefore, in accordance with the extremely high standards our Supreme Court has set in deciding similar cases, I believe that Rockwell's status as a business invitee of Whataburger did not give rise to any special duty on the part of Whataburger to protect him from the criminal acts of a third party and that no distinctive relationship was formed that would have created such a duty. Whether a duty exists is a matter of law to be determined by the court. Sungas, Inc. v. Perry, supra. The court should have entered a directed verdict in favor of Whataburger. Therefore, I dissent.
NOTES
[1] The Tennessee Supreme Court overruled that portion of its Cornpropst opinion holding that conditions in the area of the defendant's business are irrelevant in determining whether the business had reason to foresee harm to its customers. McClung v. Delta Square Ltd. Partnership, 937 S.W.2d 891 (Tenn.1996). The Tennessee court has now adopted a broader rule of liability than it stated in Cornpropst. In McClung, in addition to imposing liability in those cases in which businesses know or should know that their customers face an imminent probability of harm from the criminal acts of third parties, the court held that "[c]onditions other than those which pose an imminent threat to persons on the premises are relevant to the foreseeability of harm." Id. at 899. Therefore, the court said, the number, nature, and frequency of crimes committed on or near a business's premises should be considered in determining the foreseeability of harm and determining whether liability should be imposed on the business for the criminal acts of a third party. Id.
[2] It is likely that Facemire might have been decided differently if it had been decided by our Supreme Court rather than by the federal court. In Dailey v. Housing Authority for the Birmingham District, 639 So.2d 1343 (Ala.1994), the Supreme Court of Alabama refused to impose a duty to protect on a landlord that had voluntarily provided private security.